## EATON *versus* PATTERSON & HINCHMAN.

1. A Court that first commences the exercise of its powers, can not be obstructed in the legitimate exercise of them, by another Court of only co-ordinate and equal jurisdiction.

2. But the fact, that the County Court has before it a question of the indebtedness of a garnishee to a debtor, will not preclude other creditors from interposing, in Chancery, against a judgment, on such garnishment.

3. To constitute an equitable lien, there must be a consideration, not only good, but valuable and adequate.

4. What is an adequate consideration, can only be defined to be one, not so disproportionate, as to shock the sense of morality and fair dealing.

5. An amount paid for a judgment, (to enjoin which a bill had been filed,) less than it was rendered for, held not to be inadequate, under the facts.

6. A Court of equity will always prefer the oldest lien of a creditor on the estate of a debtor, where proper diligence is exercised.

7. Where a creditor has been *first* in point of time, in pursuing legal means to obtain payment of his debt; his lien in equity will be extended back to the time when his legal remedy failed.

8. But this principle is not to be so construed, as to prevent a debtor from preferring one *bona fide* creditor to another.

This case was commenced by bill in Chancery, filed in Madison Circuit Court, by the defendants in error, Patterson and Hinchman.

The object of the bill was to enjoin the County Court from proceeding in the matter of a garnishment, existing in that Court, between Eaton, a creditor of one Turner, and Atwood and Brahan, debtors, as was alleged, of the latter.

Before these proceedings, one Ragland had recovered judgments against Atwood, Brahan, and Turner, as indorsers of a promissory note. Turner having satisfied the judgment against himself, took from Ragland an assignment of the judgment against Atwood and Brahan, which, after several transfers, became the property of Patterson, who subsequently transferred a portion of his interest therein to Hinchman. At the time that Patterson became the entire owner of the judgment against Brahan and Atwood, the latter had procured an injunction thereon ; which, after the assignment, was dissolved. The consideration paid by Patterson, for the judgment, was about thirteen hundred dollars, and the original amount at the time of filing this bill, near three thousand.

Under these circumstances, Eaton, being a judgment creditor of Turner, procured a summons of garnishment from the County Court of Madison, requiring Atwood and Brahan to answer as to their indebtedness to Turner, and to prevent their recovery, was the present bill filed.

On a final hearing, the injunction was perpetuated, and the County Court enjoined from rendering judgment on the garnishment : to revise which decree, Eaton took an appeal to this Court.

A more full statement of the facts of the case, and of the positions assumed by the plaintiff in error, will be found in the opinion of the Court.

*Brandon* and *Shortridge*, for Plaintiff.—*Hopkins*, *contra.*

LIPSCOMB, C. J.—This cause comes before us on an appeal from the decree of the Court of Chancery for the County of Madison.

For the sake of perspicuity, it will be proper to make a statement of the material facts on which the decree was founded. One N. Ragland recovered a judgment against Brahan & Atwood, as indorsers of a promissory note ; which judgment, at the time this bill was filed, amounted to near three thousand dollars. Ragland also recovered another judgment against Simon Turner, a second indorser of the same note. Turner paid up the judgment against him, to Ragland, on condition, that Ragland's judgment against Brahan & Atwood, should be for his benefit, and execution should run on it to his use ; and on the 28th June, 1825, an indorsement was made on the execution of Ragland against Brahan & Atwood, that the whole amount of the execution was to be paid to John McKinley, the attorney for the plaintiff, for the use of Simon Turner, and such persons as he had given orders for parts of it, and was not to be paid to any body else. About the same time, Turner being indebted to Childress & Patterson, on a note to the amount of something more than seven hundred dollars, gave in discharge of that debt, three orders—one on the attorney, Mr. McKinley, one on the sheriff, and one on Mr. Mead, the clerk of the Court, in favor of Childress & Hickman, directing each of them, if the money collected on the judgment against Brahan & Atwood, should come into their hands, to pay Childress and Patterson the amount of the principal

and interest of his note due to them, Childress having transferred to Patterson the entire control of the business.  Patterson purchased from Turner the entire interest in the judgment ; but, as he alleges, fearing that Brahan and Atwood, from their being a family connexion between them, might expect greater indulgence than his situation would permit him to extend to them, if the transfer stood in his own name, agreed with one Henry Stokes, that it should be transferred to him, and he was to hold it subject to the control, and entire direction of Patterson ; and the transfer of Turner's interest was made, not on the execution, but on a separate piece of paper, in the following words: " For value received, I hereby assign to Henry Stokes, the full benefit of a judgment at law, in favor of Nathaniel Ragland, against Brahan & Atwood, the execution in which case is endorsed for my benefit; and which judgment has been enjoined upon a bill filed by said Braham & Atwood against said Ragland and myself, and which is now depending in the Madison Circuit Court in Chancery ; and I hereby authorise the said Henry Stokes, or assigns, to manage and superintend the said suit in Chancery, and I promise to give any aid that may be necessary on my part, to carrying on and managing of said suit. And the said Henry Stokes or his assigns, are hereby further authorised, to have said execution, when issued, endorsed as they may direct, so as to enable them, or either of them, to receive the amount of the said judgment.  Witness my hand and seal, this 11th day of April, 1826.

(Signed)    " SIMON TURNER, Seal."

Patterson alleges, that he paid about thirteen hundred dollars for the judgment, to Turner, including

the note due to Childress & Patterson.  Stokes afterwards endorsed Turner's assignment to Patterson in the words following, " I assign the within judgment, or debt to Benjamin Patterson, without any recourse on me, either in law or equity.  10th September 1826.

(Signed,)          HENRY STOKES."

Afterwards, Patterson being indebted to Benjamin M. Hinchman, for the payment thereof, transferred by assignment to him a part of his interest in the judgment he had purchased from Turner, in the words following :

" For value received, I assign twenty-six hundred dollars of the judgment within named, with interest thereon from the 13th of July last, to Benjamin M. Hinchman, in trust, for the use of Samuel Archer, (Philadelphia,) and guarantee the payment to him, free of all charges, for collection.  Witness, my hand, this 12th September, 1826.

(Signed,) BENJAMIN PATTERSON."

By an arrangement subsequently made between Scruggs, the agent of Hinchman, it was agreed, that the whole interest of the judgment should stand for the benefit of Hinchman, on Scruggs undertaking that the balance, after paying the amount due to Hinchman, should be paid over to Patterson.  The injunction granted Brahan & Atwood, had in the mean time been dissolved, and an execution against them had been levied on the 25th January, 1828. The indorsement made on the first execution was copied on this ; and there was a further indorsement on the execution last issued :

" The whole amount of this execution is to be paid to McKinley & Hopkins, for the use of Benja-

min M. Hinchman, and is not to be paid to any other person.   15th February, 1828.

(Signed,)          SIMON TURNER."

This, though bearing date on the 15th, was signed on the 16th. On the same day Eaton sued out a summons of garnishment from the County Court of Madison county, then in session, requiring Brahan & Atwood, as garnishees, to say on oath, what they were indebted to Simon Turner.

There is no evidence of Eaton's being a judgment creditor of Turner, further than the allegation in the bill, that he had, some years before, recovered a judgment in the County Court of Madison County, against one Hart & Turner; and a recital in the Writ of Injunction, and a like recital in the Injunction Bond, that Eaton had recovered a judgment against Hart & Turner in the County Court of Madison County, at the Spring Term, 1824, of that Court. To the summons of garnishment, Brahan & Atwood answered, that they owed to Turner the amount of the judgment, as it appeared by the record of the said judgment. But before they had finished their answer, and before any judgment had been rendered against them, a bill was filed by Patterson & Hinchman, on the facts stated, and the County Court enjoined from further proceeding in the garnishment, against Brahan & Atwood: and this injunction was afterwards, on the hearing of the bill, answer, and testimony, made perpetual, and Eaton decreed to pay cost.

A great many objections have been urged against the decree, by the appellants. Such as we may consider material, we shall endeavor to examine with due consideration. We shall not, however, in this

investigation, confine ourselves to the order, in which points were made and presented to us in argument.

It is contended, that the facts charged in the bill do not make out a case for chancery jurisdiction, in as much as the bill shows that a court of competent jurisdiction, had the subject matter of the bill in a course of adjudication. It is an admitted principle, that where two courts have an equal and concurrent jurisdiction, that the one that commences the exercise of its jurisdiction, first, has the preference, and is not to be obstructed in the legitimate exercise of its powers, by the court, that on the subject matter would be only co-ordinate.

Let us enquire how far the facts will make out a case of concurrent jurisdiction. What was the subject of judicial investigation before the County Court, and how was it exercising its jurisdiction, at the time its further progress was stayed by the chancellor's writ of injunction? Under a statute of this State, and not in the exercise of plenary common law authority on the subject, the County Court had awarded a summons of garnishment to Brahan & Atwood, at the instance of Eaton, and they were required to answer on oath, what they were indebted to Turner, the debtor of Eaton. The court of chancery could have compelled the same disclosure if it had been resorted to; and so far the two jurisdictions, the one in the exercise of plenary chancery jurisdiction, and the other, the limited power conferred by statute, would have been concurrent, in compelling a supposed debtor to disclose, what he was indebted, with a view of subjecting it to the payment of a debt, that the ordinary common law process had not the power to enforce. But the two jurisdictions will not run any further to-

gether. The County Court was limited and restrain-
ed in the exercise of its jurisdiction by the statute.
If Brahan & Atwood had denied any indebtedness,
an issue could have been made up to try the ques-
tion of such supposed indebtedness; and on the trial
of that issue, the testimony would have been confin-
ed to the isolated fact, whether they owed Turner, or
not. If, however, as in this case, they were dispos-
ed to admit that they appeared to be indebted the
amount of the judgment, what authority had the
County Court to permit Patterson & Hinchman to
say that the interest of that judgment was in them,
and not in Turner; that the debt supposed by the
garnishees to be due to Turner, was in fact, before
that time, transferred by Turner to them? Such an
enquiry could not have been instituted by the County
Court. We can readily suppose a case, that the
principle contended for would interpose a bar to the
court of chancery. If, after Eaton had garnisheed
Brahan & Atwood, on his judgment against Turner,
some other judgment creditor had applied to chancery
to compel them to make the very same disclosure of
their indebtedness to Turner, and condemn it to the
payment of the debt, chancery would then have
been ousted of its jurisdiction; because, that the
County Court had concurrent power, under the
statute, to effect the same object, and had commenced
first. If the County Court would have been compe-
tent to adjudicate the right of the different claimants
to the proceeds of the judgment against Brahan &
Atwood, and afforded all of them as ample an oppor-
tunity to assert their respective rights; the court of
chancery could not have interposed, without violat-
ing a principle equally as well settled and as univer-

sal in its application, that parties must always be remitted to their legal remedy, where it is as clear and as complete as it could be in chancery. It will be perceived, that we are now viewing the case as one not of concurrent jurisdiction; because, when concurrent, a party may elect which he will resort to. It seems pretty clear that the County Court could not have determined the rights of Patterson & Hinchman. But it may be asked, if their rights could not be adjudicated, in what way could they have been prejudiced by the judgment of that court? And why should they have an interest in preventing a judgment being entered against the garnishee? To these objections it may be answered, that it is true, that if judgment had been rendered against Brahan & Atwood, from any misconduct of theirs; such as their falsely swearing that they owed Turner, when they knew that the debt had been transferred; or, as in the case of *Wyman & Clark* vs. *Vertch,* they knew that a bill had been filed to complete a disclosure of the same facts, and had not made it known to the court; such judgment would not discharge them, but would only subject them to a double liability. Yet if the judgment should be rendered against them, from their honestly answering that they were indebted, because they believed so, not knowing any thing to the contrary but that Turner was the owner of the judgment against them : if they should answer under such circumstances, and Patterson & Hinchman, knowing that they had been garnisheed, should be silent and not assert their right to prevent judgment being rendered on their answers, such criminal silence would enable Brahan & At-

3

wood, successfully, to resist the effort to fix a double liability on them. And this defence too, would be founded on the clearest principles of honesty and sound morality.

Another objection is, that proper parties were not made in the court below to the bill. It is said that Brahan & Atwood ought to have been made parties. This objection may be disposed of in a very few words. Brahan & Atwood had no interest, either direct or contingent, in the result of the bill; they were not sought to be charged, or rendered liable in the most remote degree; they have not been affected by the decree, and could not have been by any that could have been rendered; hence, there would have been no propriety in making them parties. The objection to the joinder of Patterson & Hinchman, as complainants, is equally untenable. Their interest in staying the proceedings in the County Court, was identified, and not to be separated; because, they both were to be benefited by the debt due from Brahan & Atwood, in an unequal degree, but deduced from the same title. There was a privity, too, between them, that rendered it fit that they should prosecute their claim together.

Having disposed of the objections to the jurisdiction exercised by the chancellor, and to the fitness of parties to the bill, the most interesting enquiry remains to be made into the merits of the case. The mode of transferring the interest from Turner to the complainants, is not understood to have been questioned. Courts of law will protect an equitable lien, whenever they can do it: courts of chancery will always afford this protection when resorted to in time. To constitute an equitable lien, it must be founded

on a consideration not deemed merely good in law; but it must be valuable and adequate. What is an adequate consideration, is a subject of much difficulty to determine; and the Supreme Court of this state felt the full force of this very embarrassing question in the celebrated usury cases. Those cases were of extraordinary features, and were calculated to elicit the most vigorous exercise of chancery powers, to relieve against hard bargains; and with every disposition to afford relief and protect an unfortunate class of debtors, from the ruinous effects of their hard bargains. The Court could give no other solution, to this difficult subject of enquiry, than "that the consideration must not be so disproportionate, as to shock our sense of that morality and fair dealing, that should always characterize transactions between man and man."

In those cases, the original parties to the contracts, were before the Court. I do not know that the principle is different in the case we have now under consideration. A creditor complains that the assets of his debtor have been transferred, without an adequate consideration. If this should be found to be the case ; and if it should be found that Patterson and Hinchman had not paid an adequate consideration to Turner, chancery should not aid them, but should leave them to the full consequences of any advantage that Eaton might have over them in a court of law.

The evidence fully establishes the consideration paid by Patterson to Turner, to amount to upwards of thirteen hundred dollars; for more than half of which amount Turner had been previously the *bona fide* debtor of Patterson. When it is bourne in mind

that this consideration was paid at a time when Brahan & Atwood were still contesting the right of Turner to obtain satisfaction of the judgment against them, and had by bill, enjoined proceedings at law ; the consideration will not seem so inadequate, as to shock honest men at the transaction. It is clear too, that if Patterson should fail to recover the amount of the judgment against Brahan & Atwood, he would be subjected to an entire loss of the consideration money. There was an objection taken in the argument, to the testimony of Turner and Stokes, by whom the consideration and the transfer from Turner was proven, on the ground that they were interested and incompetent witnesses. There is not the slightest ground to believe that Turner had any interest in the result of this suit; if he had any, it was fully balanced between the parties. It was said that Stokes being the security of Turner on the refunding bond given to Brahan & Atwood, on the dissolution of the injunction they had obtained, fixed his interest ; the objection would have been a good one, if it had been taken in that suit; but it does not make him an interested witness in this. There was no exception taken to the testimony of either of the witnesses on the hearing of the bill before the chancellor, and it is too late to make it now : besides, the record shows, that the testimony was taken and read by consent.

The authority in 1st *Massachusetts Reports*, 117, can not control this case. It goes only to show, that if the consideration of an assignment is adequate, that a Court of law will protect this equitable lien against the creditor of the assignor. One of the Judges expressed a doubt, whether the assignment ought not

to be made by deed. And perhaps, in Massachusetts, where they have no court of equity, and the relief granted is by an application of the principles of the common law, there is something plausible in the doubt. The other Judge was, however, of the opinion, that the assignment need not be by deed. If there had been a court of chancery in Massachusetts, and the application had been made to that Court, there would have been no doubt of its competency to protect an equitable lien acquired by parol.

It is contended that Eaton's equity is the oldest, and should be preferred : that by Ragland's assignment to Turner, Eaton's judgment had acquired a lien—that it could not lose by Turner's assignment to Patterson.

If Patterson and Eaton had both went into a court of chancery, to compel Brahan & Atwood to pay over to them the amount of their respective demands against Turner, out of the judgment, a court of equity would have first satisfied the oldest lien ; and in that event, the party who had first exhausted his legal means to obtain payment, would be preferred. If Eaton had used all the means that a court of law could furnish him with, without success, and had been first in point of time, in employing those means, his lien would relate back to the time when his legal remedy failed.

But this principle is not to be so construed as to prevent a debtor from preferring one *bona fide* creditor to another : and it has been seen, that Patterson occupies that ground of preference. If Eaton had filed his bill, or if he had issued his garnishment before the transfer by Turner to Stokes had been made, he would have acquired a preference by his superior

diligence. This principle was ruled, in the case of *2 Stewart, 378. *Lucas, et al.* v. *Atwood, et al.*. But until a lien had actually attached, Turner had a right to prefer any one of his *bona fide* creditors.

The case in 20 *Johns.* 554, was relied on by the plaintiff in error, as 'an authority restraining this right of preference given by Turner, and setting up a superior equity in Eaton, as the judgment creditor of Turner. In that case, Davis, a merchant in New York, became greatly involved in debt, and stopped payment. He transferred all his stock of goods, and debts due him, to Haden, in trust, for all his creditors, on condition that they should discharge him from further liability within thirty days from the date of the assignment, on their receiving their several dividends: the creditors refused then to assent to the conditions. He then made a second assignment to Haden, for the benefit of certain of his creditors, to be void if they would not accept five shillings in the pound, as full satisfaction. The creditors refused to give their assent to these terms.

Some of Davis' creditors sued him to judgment, and had *fi. fa.* returned *nulla bona,* and then filed their bill against Haden the trustee, to have the funds of Davis, in his hands, applied to the satisfaction of their judgments. Haden paid over to Davis a part of the funds he had collected, as trustee, after the bill had been filed. The court condemned the trust fund in the hands of the trustee, and further decreed against him, for the amount of money paid over to Davis, after the filing of the bill. This case was decided on *b 4 Johns. C. Rep. 687.* the authority of Chancellor *Kent,* in *McDermot* vs. *Strong :*[b] and there is not a principle contained in either of the cases to impair the right acquired by a

*bona fide* assignment to a creditor, before means had been taken to subject the trust fund in the hands of the trustee.    Much stress was laid on the fact that Brahan & Atwood had no notice of Patterson's and Hinchman's interest until they were, one of them, on his way to the Court-house to answer to the garnishment of Eaton, and the other in the act of making his answer.

This can not be an important enquiry: if Patterson & Hinchman held the interest in the judgment for an adequate consideration, passed before the issuance of the summons of garnishment, it is not material, that Brahan and Atwood should have had notice of the assignment, for any other purpose than their own protection from a judgment on the garnishment : if they received the notice before they had made their answer, it was in time for that purpose.

There were a great many authorities referred to by the counsel for the plaintiff in error, not here noticed, because it did not appear, on an examination of them, that they were important to a correct disposition of the case.

The decree affirmed.

TAYLOR, J. not sitting.