# Southern Hardware & Supply Co. *v.* Lester.

## *Detinue.*

(Decided April 19, 1910. 52 South. 328.)

1. *Banks and Banking; Depositors; Relation.*—The relation between a bank and a general depositor is that of debtor and creditor respectively.

2. *Same; Payment of Checks; Extinguishment of Liability.*—A bank by paying checks on it extinguishes its liability to the deposi-

[Southern Hardware & Supply Co. v. Lester.]

tor to the extent of the sum so paid if free from fraud or other vitiating circumstances.

3. *Same; Title to Money Paid.*—Currency delivered by a bank in payment of a check is the money of the bank and not the money of the drawer of the check.

4. *Same; Checks Procured by Fraud; Liability for Payment.*— Where a bank has no notice of a fraud in procuring checks to be drawn by the drawer, the bank is not negligent in honoring such checks, and the checks are not forgeries in such sort as to render the bank liable to the drawer for paying them.

5. *Bills and Notes; Procuring Check by Duress; Validity.*—Where the issue of checks by an officer of a corporation, or by a person are procured to be issued by duress of such officer or person, the checks are utterly void as between the payee and such drawer.

6. *Detinue; Right of Action; Title of Plaintiff.*—Where plaintiff's sole reliance in detinue is title, the comparative rights as between the parties is not always the test of recovery or not, since a defendant may prevail because of title outstanding in a third person.

7. *Same.*—One wrongfully deprived of the possession of his property may recover it if it can be identified.

8. *Same; Title and Right of Possession.*—Where a payee fraudulently procures the issuance of checks, their payment as far as the payee is concerned is wrongful and the legal title to the money paid thereon and the right to its immediate possession is in the drawer of the checks, and it may be recovered in detinue from the payee, in this case there being no question but that the currency sued for was the identical money delivered to the payee by the bank.

9. *Same; Suit Against Sheriff.*—Where the action is against a sheriff for money obtained under and by virtue of a warrant of search and seizure, the sheriff is properly allowed to bring in as a party to the suit as the claimant of the money the person from whose possession the money was taken for the purpose of litigating the question of title and possession as provided by section 6051, Code 1907.

10. *Same; Claim by Third Person.*—Where in detinue a claimant is substituted for the original defendant pursuant to section 6051, Code 1907, the proceedings then becomes one between the plaintiff and the substituted defendant.

11. *Courts; Concurring Jurisdiction; Retention of Same.*—Where a court which first takes jurisdiction of the cause has adequate jurisdiction to grant relief to which the parties are entitled, and the court's jurisdiction and plaintiff's right to proceed therein once attaches, it cannot be arrested or taken away by proceedings in any other court; this rule does not apply if the power of the court is too limited to afford relief to which the party is entitled.

12 *Property; Ownership; Title.*—If once subjected to ownership there is and must always be title to all things real and personal, since if on decease of the owner there is no taker, the property escheats to the state. Title, however, may be of several kinds; absolute, conditional, equitable or legal.

13. *Search and Seizure; Title to Money Seized.*—Under section 7770, Code 1907, the magistrate issuing the search warrant has no

jurisdiction to determine title to the property taken thereunder unless it is established that it was embezzled or stolen.

·APPEAL from Mobile Law and Equity Court.

Heard before Hon. SAFFOLD BERNEY.

Detinue by the Southern Hardware & Supply Company against Frank Cazalas, Sheriff, for certain moneys. On motion of the sheriff, Lillie B. Lester was alleged to be the claimant of the property and was substituted as defendant. From a judgment for defendant plaintiff appeals. Reversed and remanded.

McINTOSH & RICH, for appellant. Under the facts in this case the principal may recover property misapplied by his agent so long as it is distinguishable.—1 A. & E. Ency. of Law, p. 1175; *Overseer of Poor v. Bank,* 44 Am. Dec. 399. There was no question under the evidence about the identity of the money.—31 Cyc. 1605, 1606; *People v. Gallagher,* 33 Pac. 892, s. c. 35 Pac. 81; *Commonwealth v. Tuckerman,* 10 Gray 173. The contention of appellant is that it had absolute property in this money or fund drawn out of the banks and charged against it on the books of the bank, but that in any event under the facts in this case absolute property was not essential to maintain this action.— *Stoker v. Yerby,* 11 Ala. 322; *May v. St. Clair,* 11 Wall. 235; *U. S. v. State Bank,* 96 U. S. 35. Where a substituted defendant is brought in as in this case, the plaintiff has the affirmative of the issue and the burden of proof rests primarily on him, but claimant is limited to the proof of her title.—*Keyser v. Mass, et al.,* 111 Ala. 295. Claimant did not pretend to have title but insisted that the title to the money was in the banks which had paid it out. Her fraud deprived her of any claim against any party or the owner of the money.— *Bir. Nat. Bank v. Bradley,* 103 Ala. 120; *Kitchell v. Jackson,* 71 Ala. 561.

[Southern Hardware & Supply Co. v. Lester.]

WEBB & McALPINE, for appellee. In the first place the appellant corporation through its president invoked the process of the inferior criminal court to seize the money, and said court not only had the power but it was its duty to award the money to the party entitled to the same and until that was done that court had exclusive jurisdiction of the matter, and no other court had a right to interfere.—Sec. 7770, and 7771-2, Code 1907; *Sullivan v. Robinson,* 39 Ala. 613; *Henderson v. Phelps,* 58 Ala. 590. It appears that the plaintiff did not have the right to immediate possession of the land at the time this action was commenced and hence, detinue will not lie.—*Walker v. Fenner,* 20 Ala. 192, and authorities supra. The relation between a bank and a. general depositor is that of debtor and creditor, and the money becomes the property of the bank.—*Ex parte Jones,* 77 Ala. 330; *Alston v. The State,* 92 Ala. 124. The sheriff was holding the money for the magistrate, the judge of the inferior criminal court, and he had neither the right nor the power without an order from that court to do anything with the money or to choose or determine what should be done with it. The gist of the action of detinue is the tortuous detention of the property, not the original taking.—*Pruett v. Gunn,* 48 South. 492.

McCLELLAN, J.—The Southern Hardware & Supply Company instituted in the law and equity court of Mobile this action of detinue to recover $5,620 of United States currency against Frank Cazalas as sheriff of Mobile county. The sheriff had come into possession of the currency as the result of obedience to the mandate of a search warrant issued out of the inferior criminal court of Mobile county on an affidavit made by Hardaway Young, wherein it was charged that Lillie B. Les-

ter and her husband, Fleetwood Lester, had stolen the said sum of money belonging to the Southern Hardware & Supply Company, a corporation. After service of the writ in detinue on the sheriff, he appeared and suggested, as provided by Code 1907, § 6051, Lillie B. Lester as claimant of the currency in question, and, after notice served upon her, and according to the statute, Lillie B. Lester became the substituted (for the sheriff) defendant, and so appeared by counsel. She subsequently filed a plea and also a "statement of claim." Her plea was the general issue; in short, by consent. Her "statement of claim" denied the plaintiff's legal title to and right of immediate possession of the property in suit, and, in addition, stated the circumstances under which the sheriff came into possession thereof, that the sheriff made return of his execution of the search warrant on the day of its issuance, and that on the following day this suit in detinue was instituted.

On the state of fact in this record these conclusions cannot be escaped: That Hardaway Young, the president of the appellant, as the result of duress of an aggravated character, signed an order whereby, in the usual course of conduct of the appellant's business, another officer of appellant issued checks, aggregating the sum represented by the currency sued for, to Lillie B. Lester, which checks were drawn on banks in the city of Mobile and against the accounts of the appellant therewith, and that Lillie B. Lester secured on these checks or on the cashier's checks issued in response to those checks from these banks the identical money sought to be recovered in this action. These conclusions of fact are not the subject of serious controversy between counsel on this appeal. Indeed, as we understand the contention of counsel for appellee, both here and below, it is that, aside from the matter of exclusive

jurisdiction, asserted only in brief, as upon the provisions of section 7770, to be later considered, the plaintiff in instituting detinue has mistaken its remedy, for the reason that the legal title to and right to the immediate possession of the currency resided in the banks honoring the checks made payable to and collected by Lillie B. Lester. The currency came into the possession of Mrs. Lester by the honoring of the checks drawn in her favor on banks with which appellant was a general depositor. The relation then existing between appellant and the banks was that of a creditor and debtor, respectively. By the checks the creditor directed its debtor to pay the amounts of money stated therein to Mrs. Lillie B. Lester, and this the debtor banks did. If free from fraud, or other vitiating circumstances affecting the banks' rights, it is obvious that the debtor banks extinguished their liability to their creditor to the extent of the sums represented by and paid upon these checks; and from this premise it follows undeniably that the currency delivered to Mrs. Lester was then the money of the debtor banks, and not the money of the drawer, creditor. That this is true is obvious when it is considered that a debtor cannot discharge his obligation to his creditor by payment or satisfaction out of his creditor's assets, funds, or values. To operate as a payment or satisfaction, the debtor must, of course, part with his assets, funds or values. While these considerations are expressions of self-evident legal truths, the case made by the evidence in this record cannot be resolved, as is insisted, to the conclusion of rights asserted, by the application of the legal truths stated.

The issuance of the checks in question was the immediate result of the order signed by Young. The evidence before us leaves no room to doubt that he cop-

ied the order and signed the order because of such duress of physical fear, enforced by a drawn pistol, as made him a mere automaton to register the will of Mr. Lester.—10 Am. & Eng. Ency. Law (2d Ed.) pp. 334, 338, and authorities in note 3 on the latter page; *Royal v. Goss,* 154 Ala. 117, 45 South. 231. That Mrs. Lester was both cognizant of and participated in at least preliminarily and latterly, the profit of this aggravated act of coercion, cannot be gainsaid on the evidence here. She is shown, among other circumstances, to have borrowed on the morning of the event a pistol from her landlady, to have called Young over the phone and requested him to come to her place of abode, concealing the presence thereat of her husband, to have been within reach of call by her husband, who, with Young, was in the parlor where the order was copied and signed; to have taken the order, secured as stated and to have gotten the money therein mentioned, which was, as the order recited, for the purchase of "Mrs. Lester's stock" in the appellant corporation; and to have left the residence, on her errand, after a parting warning to her husband, in effect, to refrain from extreme measures. So that Mrs. Lester was not innocent of the wrong from which the checks to her resulted and by the payment of which the identical currency here sued for came into her possession. Can recovery from her of the currency, the specific thing, by appellant, be defeated on the theory that the legal title to and immediate right of possession of the money, essentials to the maintenance of detinue where the title, alone, as here, is the sole reliance of the plaintiff to recover the chattel (there being no evidence of prior possession of this money by the plaintiff) was at the commencement of this action, in the several banks cashing the checks? A satisfactory reply to this question depends, as respects

the relation of the banks to this currency, upon the status created by the issuance and payment of the checks to Mrs. Lester. Undoubtedly the checks issued by the officer of the appellant in the usual course of conduct when the president thereof executed orders for the payment of money, whether signed as president or not, and without any notice of the means employed to secure the order, were as between Mrs. Lester and appellant utterly void, because of the duress practiced to procure this issuance. Authorities supra. But this result did not obtain as respected the banks on which the checks were drawn and by which they were paid to Mrs. Lester. If the banks had no notice of the fraud underlying the issuance of the checks, and none whatever was shown, the banks were guilty of no negligence in honoring them. The checks were not forgeries in such sort as to render the banks liable for the sum so paid out on them in an action by the appellant against the bank. These checks were in themselves genuine. Their infirmity lay in the fact that as the effect of an illegal cause they were issued. If, to reiterate, the banks paid them without notice of the wrongful conduct innocently superinducing their (checks') issuance, the banks were not negligent, and the sums so paid were discharges pro tanto of the debtors' (banks') liability to their creditor, the drawer of the checks. Such, this record shows, was the practically applied view of both banks and appellant, in consequence of the issuance of the checks and their payment by the banks; it being established that the banks charged the sums severally paid by each on the checks so issued to the accounts of appellant.

So the result of this point is that the banks (debtors) have satisfied pro tanto their indebtedness to the general depositor, their creditor, and hence the sums so paid on the checks were not, after delivery thereof to

Mrs. Lester, the property of the banks; for the obvious reason that satisfaction pro tanto thereby of their liabilties to the creditor denuded the debtor banks of any right or interest in the money, they not, of course, being permitted to both discharge their liabilities to the creditor and, at the same time, retain the right to the means of that discharge. It accordingly follows that the banks are on this record without right, title, interest or claim in or to the money delivered, as indicated, by them to Mrs. Lester.

The necessary consequence of the winnowing process before essayed is that the contest is narrowed to the inquiry, not which of the two, appellant or appellee, has the better right to the money involved, for in detinue, where plaintiff's sole reliance is title, comparative right, as between the parties to the action, to the possession, is not always, (if ever, we may interpolate, as a query) the test of recovery vel non, since a defendant may prevail, as is here asserted, because title is outstanding in a third person, but the inquiry is: Did the plaintiff at the commencement of this action have such title as authorized a recovery in detinue, the essential being title to, general or special, and the right to immediate possession of, the subject-matter claimed? By the application of the rule of exclusion we think it must be affirmed that plaintiff had such title, and, following it, the right to immediate possession.

There can be no questioning on this record that the currency here sued for was the identical money delivered by the banks to Mrs. Lester. Nor can there be two opinions on the right of one wrongfully deprived of the possession of his property to recover it, in specie, in an action of detinue, where it can be identified. To all things, real or personal, once subjected to ownership, title there is and must be. In the absence of a taker on

decease of the owner, property escheats to the state. That title may be of several kinds; among them, absolute, conditional, equitable, and legal. In this instance we are concerned with the last mentioned, viz., the legal. That is the crux of the issue of law the defendant asserted to success below, and again urges here. The only parties whose rights could be or were for practical purposes involved in the question of title to this currency were the banks paying the checks, the plaintiff, drawer of the checks, and Mrs. Lester, drawee of the checks and receptor of the money thereon.

Upon what appears to us sound reason we have excluded the banks from any right or title (and there is no semblance of circumstance, even, that the banks were or are claiming any right or title to the money, having, respectively, charged the several sums against the accounts of plaintiff with them, respectively), to the currency in suit. So that in final analysis the point of inquiry is: Which, appellant or appellee, had at the inception of this suit the legal title to the currency? One or the other, and one other, must have then been the repository of the title. Was the appellee? If she was not, then appellant was the repository of the legal title to this currency. The banks, to repeat, are not now factors in the equation. As between them and the plaintiff, there is no contest, if, indeed, there could be, no negligence on their part in honoring the checks being shown. But this conclusion cannot avail appellee whose participation in a wrongful act made her the receptacle of funds to which in law she was not entitled. If she could successfully claim even a measure of title to funds so received by her, on the ground that the creditor's debtor honored a check written and payable to her as the result of a wrongful act of which she knew, and in which she, at least, acquiesced, we would person-

ify in practice a violation of the rule, based on evident morality, that one cannot have advantage of one's own wrong. In order, as readily appears, to find, as against appellant, title to this currency in Mrs. Lester, it must be done by the very operation of sanctioning, yea approving, an act, wrongful in its inception and wrongful throughout the course of acts, finally placing in her custody the funds in question. The appellant's checks were wrongfully secured to be issued, and their payment, as far as Mrs. Lester was concerned, was wrongful.

Out of such wrongful acts no title against the wronged could possibly vest. Having no place with the wrongdoer, the title must have been with the wronged. The medium, the banks, through which the wrongdoer secured the funds, passed out of the contest between plaintiff and defendant, and that there was an innocent medium cannot as between these parties create a status of title that could not have existed had these funds been innocently paid in cash from the till of the plaintiff on the order of physical fear produced by a drawn weapon. The plaintiff had, when this suit was instituted, the requisite title and right to the immediate possession of the identical currency to maintain detinue. Code, § 7770 provides: "When the property is taken under the warrant and delivered to the magistrate, he must, if it was stolen or embezzled, cause it to be delivered to the owner, on satisfactory proof of his title. * * *" While, on the trial below, the defendant offered no evidence, it will not be assumed that, had the magistrate entered upon the inquiry whether the money had been stolen or embezzled, the defendant would have shown on her behalf that such was the case. Unless it was so established, the magistrate had no jurisdiction under the quoted phase of the statute (section 7770) to determine title.

However, appellee's counsel insist that plaintiff could not recover in this action because the sheriff was bound to hold the currency, could not of his own violation surrender it, until the magistrate determined the questions triable by him in virtue of the quoted provisions of section 7770. The rule, as generally stated, is familiar that "where the jurisdiction of a court and the right of a plaintiff to prosecute in it has attached that right cannot be arrested or taken away by proceedings in any other court."—*Troy Fertilizer Co. v. Prestwood,* 116 Ala. 119, 22 South. 262, among others. But this rule, as generally stated, depends for effective application upon one condition, among others, viz., that such court, first taking cognizance of the matter, must be adequately jurisdictioned to grant the relief to which the parties are entitled, or, conversely, that the rule indicated does not apply where the court first taking cognizance of the case is too limited in power to afford the relief to which the parties are entitled.—8 Am. & Eng. Ency. Law, p. 33; 11 Cyc. pp. 983-986; *Eaton v. Patterson,* 2 Stew. & P. 9, 15; *Dwyer v. Garlough,* 31 Ohio St. 158, 160.

If it should be assumed that the magistrate's jurisdiction under the authority of section 7770 to determine the title to the currency in question was equal and concurrent with that of the law and equity court to do so, this record presents a case where the plaintiff abandoned the first tribunal for the second, and, in proper order, the defendant, without objecting to the latterly assumed jurisdiction, appeared and contested the plaintiff's right to the property involved. It may be debatable whether the defendant under such circumstances can question the jurisdiction of the latter court. It is unnecessary to now decide the matter.

As appears from the statute (section 7770), the jurisdiction of the magistrate to determine the title to property taken under a search warrant is conditioned upon whether it was "stolen or embezzled." A more limited power of adjudication could hardly be provided; and its restrictiveness is emphasized when compared to that enjoyed, in cases for the determination of the title to personal property, by the law and equity court. In this latter court, whether the property was "stolen or embezzled" is not a condition to jurisdiction. There parties were entitled to a determination of the title to the currency even if its anterior (to the sheriff's) possession by defendant was not the result of acts within the condition of the statute (section 7770). This the magistrate's restricted power could not afford. It therefore follows that the rule against the ouster of equal, adequate, and concurrent jurisdiction first obtained has no application to this case. Having the right to invoke the more ample jurisdiction of the law and equity court, the plaintiff's demand for the property on the sheriff was (if necessary) a warranted initial step consistent with the contemplated invocation of a more adequate jurisdiction. The sheriff did not justify his detention upon the ground that he held the property subject to the magistrate's order in the premises, but contented himself with the suggestion that Mrs. Lester claimed the property and invoked the power of the law and equity court to bring her in to litigate the question of title and possession as provided by Code, § 6051. In adopting this course we can see no fault.

When the substituted defendant came into the litigation and propounded her claim to the currency, the proceeding became a civil cause between plaintiff and (substituted) defendant.—*Sullivan v. Robinson,* 39

[F. A. Ames Co. v. Slocomb Mercantile Co.]

Ala. 613. *Pruett v. Gunn,* 158 Ala. 123, 48 South. 492, sustained a possession sought to be justified under civil process. This is not the justification asserted here.

Our conclusion, then, is that the court erred in excluding on defendant's motion all the evidence, and, in consequence, in affirmatively instructing the jury to find for the defendant (claimant).

The judgment is reversed and the cause is remanded.

Reversed and remanded.

DOWDELL, C. J., and SIMPSON and MAYFIELD, JJ., concur.