(95 South. 379)

HUGHES v. BULLEN. (8 Div. 473.)

(Supreme Court of Alabama. Feb. 10, 1923.)

1. Insane persons ☞61—Mortgagee is "purchaser" within statute protecting rights.

A mortgagee is a "purchaser" under the terms of Code 1907, § 3347, protecting the rights of bona fide purchasers from insane persons, which includes mortgages as well as absolute conveyances.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Purchaser.]

2. Insane persons ☞98—Evidence held not to show mortgage from insane person was void.

Evidence that at the time the mortgagor executed the mortgage in question he was transacting his business in the usual, ordinary way, and there was nothing about his conduct to show that his mind was impaired, held not to show that the mortgage was void, even if made at the time he was insane, under Code, § 3347, providing that a conveyance from an insane person without notice of insanity shall not be void, but the insane person can recover the difference between the market value of the real estate and the price paid therefor.

McClellan, J., dissenting.

Appeal from Circuit Court, Franklin County; Charles P. Almon, Judge.

Bill by Grady Hughes, by his next friend, John Hughes, against L. Bullen. From a decree denying relief, complainant appeals. Affirmed.

William L. Chenault, of Russellville, for appellant.

An insane person cannot make a valid contract, and a mortgage attempted to be made by one is absolutely void. 127 Ala. 577, 30 South. 524; 131 Ala. 280, 31 South. 603; 142 Ala. 560, 39 South. 12, 110 Am. St. Rep. 50, 4 Ann. Cas. 537; 104 Ala. 642, 16 South. 689.

Travis Williams, of Russellville, for appellee.

Counsel argue that the evidence does not support the assertion of insanity, without citing authority.

ANDERSON, C. J. [1, 2] The appellant, by next friend, filed a bill to cancel a mortgage held by this appellee upon the ground that he was a non compos mentis at the time of executing same. It may be doubtful as to whether or not the appellant, though weak-minded, was, at the time the mortgage was executed, incapable of making a valid contract even according to the evidence of the medical men, which is the most favorable to his contention, within the rule declared in the case of In re Carmichael, 36 Ala. 514, a point we may concede, however, only for the purpose of deciding this case, for the reason that this appellee was a bona fide purchaser under the terms of section 3347 of the Code of 1907, and which has been construed as including mortgages as well as absolute conveyances. Alexander v. Livingston, 206 Ala. 186, 89 South. 520; Thomas v. Holden, 191 Ala. 142, 67 South. 992; Hale v. Hale, 201 Ala. 28, 75 South. 150. While there is proof of the appellant's failing health, the

great weight of the evidence shows that at the time he made the mortgage in question he was transacting his business in the usual and ordinary way and there was nothing about his conduct to impress upon those coming in daily or constant contact with him that his mind was impaired. Not only does the weight of the evidence show that this man was not abnormal mentally to the ordinary observer or those having dealings with him, but his father, the next friend, and brothers, dealt with him in a business way; one procuring a deed from him and the others bought his timber. As the bill seeks to declare the mortgage void and is not framed under section 3347 of the Code, the circuit court did not err in refusing the relief sought, and the decree is affirmed.

Affirmed.

SAYRE, SOMERVILLE, GARDNER, THOMAS, and MILLER, JJ. concur.

McCLELLAN, J. (dissenting). A question accepted as material to the disposition of this appeal is whether a mortgage executed by an insane person is within the purview of Code, § 3347. That section reads:

"*Conveyance by an Insane Person; Effect of.* —Whenever any person shall in good faith, and for a valuable consideration, purchase real estate from an insane person without notice of such insanity, such contract and conveyance shall not be void, but such insane person may recover from the vendee or those claiming under him, the difference between the market value of such real estate at the time of the sale and the price paid therefor, with interest thereon, and shall have a lien on such real estate to secure the same, and the purchasers from such vendee, without notice of the insanity of the original vendor, shall be protected in like manner and have the benefits of this section."

The writer is of the opinion that the statute (section 3347) is applicable alone to deeds of purchase and sale, to executed contracts, by insane persons.

This section (3347) is an accurate codification of the act approved March 2, 1901 (Acts 1900–01, pp. 1943, 1944).

The Code Commission of 1907 added the thereto related, but not theretofore enacted, section 3348, which reads:

"*Contracts of Insane Person Void.*—Except as provided in the preceding section, all contracts of an insane person are void, but he and his estate shall be liable for necessaries furnished him which may be recovered upon the same proof and upon the same conditions as if furnished to an infant."

The Act of March 2, 1901, and Code, § 3347, cannot be soundly interpreted without taking due account of the state of the then existing law pertinent to the subject-matters of Code, §§ 3347, 3348.

When the Act of March 2, 1901 (cited ante), now constituting Code, § 3347, was enacted, the long-established doctrine in this jurisdiction was that every character of contract or engagement sought to be entered into by an insane person (Code, § 1, defining the term) at the time the transaction occurred·was "absolutely void." Dougherty v. Powe, 127 Alá. 577, 579, 580, 30 South. 524; Walker v. Winn, 142 Ala. 560, 564, 39 South. 12, 110 Am. St. Rep. 50, 4 Ann. Cas. 537.

As pointed out in Walker v. Winn, supra, and also in 14 R. C. L. p. 582, in other jurisdictions the view prevailed that contracts of persons of unsound mind were voidable, not absolutely void, excepting cases where the insanity of the person had been adjudicated prior to entering into the contract under contest in the particular instance.

The act, and the statute (3347) codifying it, should be construed in the light of the common law prevailing in Alabama; and and the court should recognize and observe this familiar rule, stated·by Brickell, C. J., in Beale v. Posey, 72 Ala. 330:

"All statutes are construed in reference to the principles of the common law; and it is not to be presumed that there is an intention to modify, or to abrogate it, further than may be expressed, or than the case may absolutely require."

In Cloverdale Homes v. Cloverdale, 182 Ala. 419, 429–431, 62 South. 712, 715 (47 L. R. A. [N. S.] 607), through approving quotation,·the rule was thus stated:

" 'One of these presumptions is that the Legislature does not intend to make any alteration in the law beyond what it explicitly declares, either in express terms or by unmistakable implication; or, in other words, beyond the immediate scope and object of the statute. In all general matters beyond, the law remains undisturbed.' "

The class of persons touched by the act and Code, § 3347, were insane persons and innocent persons dealing with insane persons. The unfortunate insane have always deserved and received, in respect of their personal and property rights, the sympathetic care and protection of both the courts and the Legislatures. It is not to be for a moment supposed that our lawmakers intended to relax this care and preservative consideration beyond that which they have in clear terms expressed. Through the first phrase in added Code, § 3348 (quoted ante), the Legislature adopting the Code of 1907 stipulated in respect of Code, § 3347, just preceding, that "except as provided in the preceding section, all contracts of an insane person are void," later therein casting such person's liability for "necessaries" in the category to which the law assigns the liability of "infants" in like circumstances. Manifestly, the Legislature intended by the provisions of Code, § 3347, to refer its (section 3347) effect to exceptional cases within· the purview of section 3347. The rule of construction heretofore stated, with reference to changes of the common law, contrib-·

utes to confirm that view of the limited legislative purpose. Reading the statute, and the parent act, in the light of the then existing rule in this jurisdiction, that all contracts of insane persons were "absolutely void," it is apparent that in prescribing that purchases of real estate from insane persons, under the circumstances therein defined, "shall (should) not be void," the lawmakers intended to substitute for the then existing rule of absolute invalidity the rule that such purchases should be voidable only. In statutes the term "void" is often construed to signify voidable only. State ex rel. v. Colias, 150 Ala. 515, 43 South. 190; 40 Cyc. pp. 214–217, and notes where the significance of the term "void" is treated. It is to be particularly noted that the act or statute (3347) does not undertake to make valid the purchases, the contracts, and conveyances therein described. It provides that in the circumstances therein defined "such contract and conveyance shall not be void"; evidently meaning shall not be "absolutely void," as the then prevailing rule concluded.

Such, however, is not the meaning or effect of the term "void" as employed in the next section, 3348. When the term "void" is "introduced for the benefit of those who are not capable of protecting themselves, it will ordinarily receive its full force and effect," viz. as defining absolute invalidity; insane persons being incapable of protecting themselves. 40 Cyc. p. 216, note 72.

Interpreting the statute (section 3347) as rendering only voidable, not absolutely void, "contracts and conveyances" therein defined, such transactions as are within the contemplation of the section (3347) are cast in the law's category of voidable contracts; thereby investing the party, or an appropriate court for him if he be incapable of exercising the election, with the option to avoid the transaction. So reading the statute (section 3347) in this particular, it clothes the insane person, or the court authorized to elect for him if he be incompetent to choose, with the further option, in the circumstances defined in the statute (section 3347), to "recover from the vendee or those claiming under him the difference between the market value of such real estate *at the time* of the *sale and the price paid* therefor, with interest thereon," and lien is expressly given to secure the payment of such difference in market value and the price paid. (Italics supplied.) An effective election to recover this difference would operate, of course, to confirm the title passing from the insane person.

Did the act of March 2, 1901, or does its unaltered codification in section 3347, extend its effect to any other contract with respect to an insane person's real estate than that of a bargain and sale thereof?

Under the rule of construction reproduced ante from 72 and 182 Alabama Reports, it is manifest that a grievous error is committed if the statute's effect is visited upon a subject-matter not within its terms, not comprehended in its design. The language employed in section 3347, itself, forbids the visitation of the statute's effect upon mortgages, or its application to insane mortgagors. To read it as comprehending mortgages is to judicially amend the statute; this to the marked disadvantage of the unfortunates with whom it purports to deal in exceptional circumstances only. In terms the statute refers its declaration to "purchases of real estate." As subsequent provisions disclose, purchase has reference to "sale and the price paid" for the real estate. The terms "vendor" and "vendee" are employed to define the option with which the insane person, the vendor, is invested to recover the difference between the "market value of such real estate at the time of the sale" and "the price paid therefor." No one would suppose that these terms, "vendor" and "vendee," referred to mortgagor and mortgagee, any more than the latter would include the former. It is hardly necessary to observe that the option to recover the difference in market value and price paid is impossible of application to the case of a mortgage by an insane mortgagor. The statute (section 3347) provides that its benefits should extend "to purchasers from such vendee." In order to be entitled to the benefit of the statute (section 3347), the subsequently intervening innocent person must be a "purchaser from such vendee." Under this statute, obviously, a purchaser from a vendee cannot be found in a purchaser from a mortgagee. It is unfortunate indeed when plain language, in legislative enactments, is denied normal effect or is read to a purpose the language, itself, refutes.

It is said that Thomas v. Holden, 191 Ala. 142, 67 South. 992, Hale v. Hale, 201 Ala. 28, 75 South. 150, and Alexander v. Livingston, 206 Ala. 186, 89 South. 520, have construed section 3347 "as including mortgages." To the simple existence of these decisions alone is the present interpretation of the statute (section 3347) referred.

In Beaty v. Washam, 205 Ala. 92, 87 South. 337, 338, it was pronounced, in decision of a material question upon the construction of the statute (section 3347), that "Code, § 3347, * * * has reference *alone* to an insane *grantor.* * * *" (Italics supplied.)

In Hale v. Hale, 201 Ala. 28, 29, 75 South. 150, this court, in subdivision 1 of the opinion, likewise expressly refers to the statute's (section 3347) effect to an insane grantor. It is manifest that a mortgagor is not a grantor under this statute; where the terms "purchase," "sale," "price paid," "vendor," and "vendee" are employed therein, and distinctly refer to transactions of bargain and sale only.

The question was not authoritatively de-

cided in the cases of Thomas v. Holden, Hale v. Hale, and Alexander v. Livingston, noted above. In Thomas v. Holden the pleading sought relief against deed averred to have been executed by an insane person, and a mortgage executed by the same insane person. The demurrer was addressed to the whole bill, not to the phase of it assuming to invoke the application of section 3347 to the mortgage executed by the insane person. In order for the demurrer to that bill to have raised at all the issue of law whether the provisions of section 3347 were applicable to mortgages, the demurrer should have separately assailed that phase of the bill, a phase distinct from the cancellation of a deed also, therein sought. Chappelear v. Mc-Whorter, 204 Ala. 269, 85 South. 386, among others.

In Hale v. Hale, 201 Ala. 28, 75 South. 150, in which the ground of the decision is somewhat uncertain, the deed of January 20, 1915, was the only instrument executed by W. J. Hale, the alleged insane person, the complainant. The mortgage described in that bill was executed by A. L. Hale, W. J. Hale's grantee, to one Chambers, not by the insane person, W. J. Hale. It is evident that the court then misapprehended, as it seems still to do, the fact that, while the deed assailed was executed by the insane person (W. J. Hale), the mortgage was executed by A. L. Hale, whose sanity was not at all questioned. This court, as well as the court below, proceeded under the manifestly erroneous conception, set forth in the opening sentence of the opinion, that the Hale Case was similar to the Thomas-Holden Case where both a deed and a mortgage were executed by J. W. Thomas, averred to have been insane; the court below expressly stating in its opinion, quoted in the opinion of this court, that the Hale Case was "identical with the case made" by the amended bill in the Thomas-Holden Case. In the Hale Case, where the result prevailing was affected, in part at least, by a theory to be considered, the question now under consideration was not presented or advisedly decided. The idea that section 3347 comprehended mortgages was simply accepted; this upon the mistaken notion that Thomas v. Holden, in which the question was not presented for decision, had so concluded.

The untenable theory approved in the Hale Case is thus set forth on page 29 of 201 Ala., on page 151 of 75 South.:

"It is provided by statute (section 3347 of the Code) that whenever any person shall in good faith and for a valuable consideration purchase real estate from an insane person without notice of his insanity, he shall be liable to such insane grantor for only 'the difference between the market value of such real estate at the time of the sale and the price paid therefor, with interest thereon.' If, however, the grantee has not purchased 'in good faith and for a valuable consideration,' and 'without notice of such insanity' of the grantor at the time of the purchase of his real property, then such conveyance is void (Code, § 3348), and such purchaser has not the protection of the provisions of section 3347 of the Code.

"The chancellor committed no error in dismissing the bill without prejudice for this failure of necessary averment. The submission was had on the demurrer incorporated in the answer. Code, § 3128."

As appears in this quotation from the Hale Case, this court, after referring the statute's (section 3347) effect to an "insane grantor," concludes, in interpretation of Code, § 3347, that an insane grantor's only remedy is to recover "the difference between the market value of such real estate at the time of the sale and the price paid therefor." The statute (section 3347) does not so provide. Under the statute the insane grantor's transaction of bargain and sale is rendered voidable only, thereby investing such grantor with the option either to avoid the voidable conveyance or to confirm it by recovering the difference between the market value and the "price paid therefor"; expression of the latter alternative being made through the use of these permissive, not mandatory, words, that "such insane person may recover from vendee" and his successors the monetary difference stated.

In Alexander v. Livingston, 206 Ala. 186, 89 South. 520, the bill sought the cancellation of two deeds by Mrs. Ella Livingston, averred to have been insane at the time, to her son, George Livingston, who had undivided interests in the town lot and the farm land. The question now under consideration appears not to have been contested originally or on appeal. Like the Hale Case, supra, the mortgages referred to in the pleading were not executed by Mrs. Ella Livingston, the insane grantor in the deeds to her son George. The statute (section 3347) extends its protection and benefit to "purchasers from such vendee, without notice of the insanity of the original vendor." Whether purchasers, as there employed, include mortgagees of "such vendee," may be debatable; but, in any event, the Alexander-Livingston appeal (supra) did not invite or evoke decision of the question whether this statute (section 3347) includes mortgages executed by an insane person, nor does the pronouncement there made conclude the question, because, as appears, no mortgage executed by an insane person was therein involved.

Since neither the Hale nor the Livingston Cases touched the particular question of statutory construction now under consideration, they afford no possible foundation for the view that these decisions establish a rule of property which should restrain the court from declaring its real judgment upon the inquiry stated. The case of Thomas v. Holden did not establish the basis for a rule of

property. The demurrer, addressed to the whole bill, did not so assail the bill as to evoke the court's judgment upon the inquiry whether Code, § 3347, applied to mortgages by an insane mortgagor. Decisions, like Rogers v. Adams, 66 Ala. 600, in which the broad doctrines protective of innocent purchasers of property were applied, cannot soundly be given application to the exceptional circumstances defined in the Code, § 3347, wherein the subject is the property of insane persons, a class incapable of protecting themselves.

These considerations require the writer's dissent from the conclusion in the majority opinion that Code, § 3347, embraces mortgages by an insane mortgagor.