140 So. 752

## METROPOLITAN LIFE INS. CO. v. BRAMLETT.

### 7 Div. 77.

Supreme Court of Alabama.

March 31, 1932.

474

Chas. D. Kline, of Anniston, and Cabaniss & Johnston, of Birmingham, for appellant.

Merrill, Jones, Whiteside & Allen, of Anniston, for appellee.

**FOSTER, J.**

It is clear that in a controversy between the first beneficiary named in a policy of life insurance and one who was substituted for him upon the written request of the insured, who was then insane, and in a controversy between such first beneficiary and the insurer before it has paid the amount of the loss to the substituted beneficiary, or after such payment has been made with notice of the insanity, the right to recover the loss is in the first-named beneficiary, though he had no vested right as such until the loss occurred. Under such circumstances no one of them had acted to his prejudice in reliance upon the continued sanity of the insured, and no one had secured apparent rights upon a valuable consideration. The authorities all seem to support that idea. Slaughter v. Grand Lodge, 192 Ala. 301, 68 So. 367; McMurtray v. McMurtray, 67 Okl. 50, 168 P. 422; Grand Lodge v. Frank, 133 Mich. 232, 94 N. W. 731; Grand Lodge v. McGrath, 133 Mich. 626, 95 N. W. 739; Ownby v. Supreme Lodge, 101 Tenn. 16, 46 S. W. 758; State Life Ins. Co. v. Coffrini (C. C. A. Pa.) 285 F. 560; Sluder v. Nat. Americans, 101 Kan. 320, 166 P. 482, L. R. A. 1917F, 631; Columbian Nat. Life Ins. Co. v. Wood, 193 Ky. 395, 236 S. W. 562; Turner v. Turner (Tex. Civ. App.) 195 S. W. 326; Bosworth v. Wolfe, 146 Wash. 615, 264 P. 413, 56 A. L. R. 1117.

In none of those cases nor in any others we have seen was the suit against the insurer which had paid the amount of the loss to the substituted beneficiary. But there is a dictum in State Life Ins. Co. v. Coffrini, supra, that the insurer would not be liable to the first beneficiary after it has paid the loss to the

second in ignorance of the insanity of the insured when the change was made.

■ But fraud or undue influence in inducing the insured to change the beneficiary, when he had the right to make the change, does not give the first beneficiary any right to claim the proceeds even as against the new beneficiary who may have participated in the fraud. Summers v. Summers, 218 Ala. 420 (8), 118 So. 912; McDonald v. McDonald, 212 Ala. 137, 141, 102 So. 38, 36 A. L. R. 761; Cason v. Owens, 100 Ga. 142, 28 S. E. 75; Slaughter v. Grand Lodge, 192 Ala. 301, 68 So. 367; 2 Couch Ency. of Ins. Law, § 327.

■ But the general rule is that when a contract is utterly void, it does not have any existence even for the protection of one who relied and acted upon it without notice of its infirmity, and though it is negotiable paper. Hanover Nat. Bank v. Johnson, 90 Ala. 549, 8 So. 42; Kuhl v. M. Gally U. P. Co., 123 Ala. 452, 26 So. 535, 82 Am. St. Rep. 135; Birmingham Trust & Sav. Co. v. Curry, 160 Ala. 370, 49 So. 319, 135 Am. St. Rep. 102; McCormick v. Fallier, 223 Ala. 80, 134 So. 471.

We have stated the foregoing principles, not because they are disputed, but merely as preliminary to a consideration of the question in this case. For they inevitably lead to the conclusion that if the insured's request for a change of the beneficiary in this case was void because of his insanity at the time he executed it, no bona fides nor other circumstance could protect any one against the claim of its invalidity, though he acted upon it in good faith.

One question only is therefore of any uncertainty in this case. That is, whether the insured's insanity caused his request for a change of beneficiary to be utterly void, or did it merely confer upon some one the right at his election to have it avoided on that ground?

■ In order to answer that question, we inquire into the nature of the instrument by which the insured caused the insurer to change the beneficiary. The plaintiff was the original beneficiary named in the policy, but does not claim that it was assigned to him by the insured, or that it does not contain a clause reserving the right in the insured, with the consent of the insurer properly expressed, to effect a change of beneficiary. Admittedly, under such circumstances, plaintiff was thereby possessed of no vested rights in the insurance contract until there was a loss during that status. Summers v. Summers, supra; Merchants Nat. Bank v. Hubbard, 220 Ala. 372, 125 So. 335; Slaughter v. Grand Lodge, supra.

■ But such property right of the insured remained and continued unaffected after the attempted change of beneficiary as before. It is not claimed that he thereby assigned the policy to the substituted beneficiary, or otherwise undertook to release his right, still reserved, again to effect such a change, even to the extent of naming his personal representatives as the beneficiary. The effect of the attempted change was the exercise of an election reserved to him in the policy to determine whether one or another shall receive its benefits.

An assignment would deprive him of the right thereafter to name his own estate or any one else as the beneficiary. Undoubtedly an assignment by an insane person of his rights conveys nothing.

In our case of Head v. Lane, 186 Ala. 335, 65 So. 343, property was left to one for life with a power of disposition, and with remainder to plaintiff, if not disposed of. The life tenant, while insane, conveyed to defendant. The court held that since the conveyance of the life tenant was void, plaintiff was entitled to the property rather than defendant. Here was a defendant claiming under the deed of an insane grantor.

■ No one can question that under our law the contracts of an insane person are ordinarily void so as not to bind him personally, even in favor of an innocent purchaser for value. Section 6824, Code; Walker v. Winn, Adm'r, 142 Ala. 560, 39 So. 12, 110 Am. St. Rep. 50, 4 Ann. Cas. 537; Dougherty v. Powe, 127 Ala. 577, 30 So. 524; Head v. Lane, supra; Hughes v. Bullen, 209 Ala. 134, 95 So. 379; Livingston v. Livingston, 210 Ala. 420, 98 So. 281; Alexander v. Livingston, 206 Ala. 186, 89 So. 520; Galloway v. Hendon, 131 Ala. 280, 31 So. 603. This had been the settled law prior to our statute supra. Dougherty v. Powe, 127 Ala. 577, 30 So. 524; Wilkinson v. Wilkinson, 129 Ala. 279, 30 So. 578; Galloway v. Hendon, 131 Ala. 280, 31 So. 603.

But the great weight of authority in other jurisdictions is that where the contract of an insane person is entered into and has become executed in good faith for a fair consideration without notice of the infirmity, it will not be set aside unless the parties are restored to their original position. Many authorities to that effect are noted in 46 A. L. R. 419, et seq. In line with the manifest need of the existence of some such right and the equities of such a rule, our statutes have made somewhat similar provisions in favor of bona fide purchasers for value of real estate from an insane person. Sections 6822, 6823, Code. But except as protected by such statutes, under our authorities one who contracts with an insane person takes nothing, though ignorant of his insanity, and though he paid value, and his contract is valid for no purpose, whether executed or executory.

In other states the broad principles of equitable right control the courts. They hold it inequitable to say that one who innocently enters into and performs a contract with an

incompetent that is fair to him does so at his peril to lose what he has thus in good faith paid him. 2 Story Eq. Jur. (12th Ed.) § 1365-d.

■ We have here an instance where there are two volunteers, neither with a vested right prior to the death of the insured, between whom stands an innocent stakeholder. The law is clear that, due to the insanity of the insured, the first is due to receive and may now recover of the second the amount paid him by the insurer in ignorance of the claim of the first, and may have recovered it of the insurer before it made such payment. The question now is, Who shall have the burden and take the risk of recovering it from the substituted beneficiary, the plaintiff or defendant? Both are innocent. One did not acquire his rights for value, the other did. What is equitable? Undoubtedly, the equities are with defendant. But has defendant a right which the courts will protect? We think that our statute and authorities which declare that the contracts of an insane person are void should not be construed, when practicable, to create an inequitable result between others, when his rights are not affected. The decided weight of authority, as we have shown, declares against such result even when the estate of the incompetent is involved, but while we must adhere to a different rule respecting his estate until the Legislature makes a change, we are not disposed to extend it to every relation which may have some contractual properties so as to create unjust consequences.

Accordingly it was held in our case of New England Mut. Life Ins. Co. v. Reynolds, 217 Ala. 307, 116 So. 151, 59 A. L. R. 1075, that, when an insane person has received from an insurance company in which he has a policy with a loan value an amount as a loan on the policy, "It was a completed transaction, in which the insured received and held his cash paid on his policy in the form of a loan. We know of no principle by which the company can be treated as still constructively in possession of this cash," citing 32 Corpus Juris 734.

On the same principle the weight of authority supports the text of Brady on Bank Checks, § 205, in the following language: "If a depositor in a bank, after opening an account, becomes insane and draws checks while insane, or if he draws checks while sane and becomes insane before the checks are presented, the drawee bank is protected, in either case, if it pays the checks in good faith and in ignorance of the drawer's insanity. Unless there are facts present, putting the bank on notice, it is under no obligation to investigate or assure itself of the drawer's sanity. The fact that the drawer is advanced in years or is uneducated, does not impose upon the bank any duty of making inquiry as to his mental capacity."

The text is well supported by two Massachusetts cases, Leighton v. Haverhill Savs. Bank, 227 Mass. 67, 116 N. E. 414; Reed v. Mattapan Deposit & Trust Co., 198 Mass. 306, 84 N. E. 469, 471, and one New York case, Riley v. Albany Savings Bank, 36 Hun (N. Y.) 513.

We note the following quotation from Reed v. Mattapan Deposit & Trust Co., supra: "Upon becoming a depositor the relation between the defendant and the decedent was that of banker and customer, or of debtor and creditor, and the company agreed on demand to repay to him, or to his order, the amount of the deposit. Heath v. New Bedford Safe Deposit & Trust Co., 184 Mass. 481, 69 N. E. 215. The contract had previously been made at a time when his sanity was unquestioned, and when the check was cashed he simply received his own in full measure, according to its terms. By this transaction the parties did not enter into a new contract, because the act of payment of itself did not constitute an agreement, but was only the performance of the promise whereby the defendant discharged its indebtedness. In the absence of information as to his incapacity, no duty devolved upon the defendant to anticipate the use, or guard against any misuse, to which the intestate might put the money lawfully due and paid to him, and if in the ordinary course of business, without any knowledge of his lunacy, the company honestly dealt with him, there is no sound legal or moral reason why the plaintiff should be permitted to disaffirm the payment."

This is approved in the later case by the same court in Leighton v. Haverhill Savs. Bank, supra. It could not be doubted, however, that the insane maker of the check could recover such proceeds from the payee who collected it.

On the other hand, the Supreme Court of Georgia, in the case of American Trust & Banking Co. v. Boone, 102 Ga. 202, 29 S. E. 182, 40 L. R. A. 250, 66 Am. St. Rep. 167, has held that under such circumstances the check is a nullity, and its payment by the bank is no protection, though the depositor was sane when the deposit was made, but his subsequent insanity was unknown to the bank when it paid the check.

This court has held that a bank may be protected in the payment of a check which a depositor executed as the result of the duress of threats of physical violence with pistol drawn, and though it is said that the duress caused the execution of the check to be "utterly void." Southern Hardware & Supply Co. v. Lester, 166 Ala. 86, 52 So. 328. It is noted, however, that duress is ordinarily no defense to a suit on a negotiable instrument by a holder in due course, Brady on Bank Checks, p. 123, and duress does not render the

check void, but only voidable and subject to ratification, Brady on Bank Checks, p. 63.

But we view the payment by a bank of its depositor's check as quite similar, so far as the question which here concerns us, to our insurance case of New England Mut. Life Ins. Co. v. Reynolds, supra.

■ When one in his life creates a debt to come into existence upon his death, it is somewhat similar to his bank account—at least to the extent that it is a debt due to him or some one designated by him. His designation of the beneficiary acted on by the insurance company, and the payment to such beneficiary when the amount is due, is like paying the check of a depositor in respect to the question now in hand. Considering the course of business under present conditions, we do not think it is the meaning of our statutes and decisions that when a banker or insurer pays its debt at the instance of the creditor, in ignorance of his insanity, and does so under the circumstances we have described, there being no forgery involved, it should have the burden of recovering the same from him to whom it was directed to make payment. The reason is stronger when the one claiming that such duty exists is himself a volunteer, and had no vested right known to the debtor when the manner of payment was made known to it. We think the record sufficiently raises the question.

The rulings of the court were not in accord with our views, and the judgment is reversed, and the cause remanded.

Reversed and remanded.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.