164 So. 732

**IVEY v. MAY et al.**

I Div. 864.

Supreme Court of Alabama.

Dec. 19, 1935.

B. F. McMillan, Jr., and H. M. Aldridge, both of Mobile, for appellant.

win county against the appellees, W. W. May, George Marinous, and Peter Frankos, the latter a resident of Illinois, seeking the cancellation of certain conveyances, the first of which was executed by the appellant, and at a time when it is averred he was of unsound mind, "and incapable of attending to business affairs." The deed of appellant was executed to appellee Frankos, and Frankos, in turn, conveyed the property to W. W. May, and May, after litigation arose, which involved the validity of appellant's deed to Frankos, conveyed, by quitclaim deed, the same property to Marinous, another of the appellees.

The bill shows that complainant owned a piece of property in Baldwin county, at or near Loxley in said county; that the property was worth approximately $6,000; that the complainant on November 23, 1931, was of unsound mind, and so much so that he was not capable of transacting business; that he was also in feeble physical condition. That with knowledge of the mental and physical condition of appellant, and with the fraudulent purpose of acquiring appellant's property at about one-fifth its real value, the appellee George Marinous, on November 23, 1931, prevailed on the appellant to sign a deed purporting to convey the property to appellee Peter Frankos; that Frankos, to aid in carrying out the fraudulent scheme of Marinous to acquire appellant's property at an amount greatly less than its real value, accepted the deed, but shortly thereafter conveyed the property to appellee May, who was an "agent, servant or employee of Marinous," and who paid nothing for the conveyance; that the deed made to May was but a further step in the consummation of the fraud upon appellant. (And we may here say that the evidence shows that shortly after the title had passed to May, he, May, conveyed the property to Marinous.)

It appears from the bill, and the evidence fully supports the averment, that the consideration paid, and to be paid, to appellant by Marinous for the property was $1,000, of which amount $500 was paid by check drawn on the Baldwin County Bank by Marinous, and a note for $500 was executed to appellant, and which purported to have been made by Frankos.

It appears that appellant deposited the check in the Baldwin County Bank, and said bank was shortly thereafter placed in liquidation by the superintendent of banks of the state of Alabama, and some

Hybart & Chason, of Bay Minette, for appellees.

KNIGHT, Justice.

The appellant, suing by his next friend, filed his bill in the circuit court of Bald-

time thereafter, under the authority of the state banking department, and by a decree of the circuit court of Baldwin county, the said bank was reorganized, and the reorganized bank issued to appellant, to cover his deposit in the bank at the time the bank failed, 6 and 495/1250 shares of stock in the reorganized bank, and a certificate of deposit for $239.86. The said Ivey never withdrew the certificates, and, in fact, never knew of the issuance of the same, but said "documents remained in the bank until withdrawn for use as evidence in this case."

On submission of the cause for final decree, the chancellor decreed that the complainant, Robert Ivey, was of unsound mind at the time of the execution of the deed to Peter Frankos, and that George Marinous was not *"entitled to protection* as an innocent purchaser for value under section 6822 of the Code of Alabama"; the deeds from Ivey to Frankos, and Frankos to May, and May to George Marinous were each held to be null and void, but required, as a condition precedent to the cancellation of said conveyances, that Ivey pay to the register of the court, for Marinous, within ninety days from the filing of the decree, $623, representing the original cash payment for the land, with 8 per cent. interest thereon from November 23, 1931, and also that the note given by Frankos to said Ivey for $500, and which evidenced the unpaid purchase price of said land, should be returned to Frankos. The court further decreed that unless the said $623 was paid to the register "within ninety days from the filing of this decree, or if appealed, within ninety days from judgment on appeal, the said three deeds above mentioned and set out are not to be affected by this decree."

From this decree the complainant, Ivey, appealed, and has here assigned for error that part of the decree which required that the complainant, as a condition precedent to the cancellation of the conveyances, should pay the said $623 to the register for the defendant Marinous.

The respondents have neither appealed from said decree, nor have they made any cross-assignments of error upon the record. It would, therefore, seem that the decree is entirely satisfactory to them.

That Marinous was in truth and fact the real purchaser of appellant's property, in the sense that he alone was to be benefited thereby, the evidence convinces us to a moral certainty; that Marinous knew, at the time he prevailed upon appellant, Ivey, to execute the deed, that Ivey was of unsound mind, and wholly incapacitated to transact any kind of business, we are equally well convinced; that Frankos and May were mere dummies, brought into the transaction to aid Marinous in consummating the fraud upon the said Ivey, there is no room to doubt; and, lastly, that the property was worth several times the amount that Ivey was to be paid for it by Marinous, or by Frankos, we are also reasonably satisfied.

The sole question presented by this appeal is: Will the complainant, under the averments of the bill and the proof as above stated, be required to make restitution to Marinous of the consideration paid for the property, together with interest thereon, as a condition precedent to the cancellation of the conveyances?

This precise question has never been determined by this court.

■ Except in the cases provided for in sections 6822 and 6823, which have no application here, the contracts and conveyances of insane persons are absolutely void, and confer no rights upon the other party to the contract. Metropolitan Life Ins. Co. v. Bramlett, 224 Ala. 473, 140 So. 752; Walker v. Winn, Adm'r, 142 Ala. 560, 39 So. 12, 110 Am.St.Rep. 50, 4 Ann.Cas. 537; Dougherty v. Powe, 127 Ala. 577, 30 So. 524; Hughes v. Bullen, 209 Ala. 134, 95 So. 379; Livingston v. Livingston, 210 Ala. 420, 98 So. 281; Code § 6824.

This court, in the case of Hood v. Holligan, 229 Ala. 539, 158 So. 759, which was a suit to quiet title to land, held that a deed executed by a person of unsound mind to a grandson, who paid nothing for the property, and who procured the execution of the deed with notice or knowledge of the grantor's insanity, was void, and that the grantee of the grandson, though paying value, without notice or knowledge of the first grantor's insanity, received no better or higher title than the grandson, and that an offer to do equity or to make restitution was not necessary to secure a cancellation of the conveyance.

This case, we concede, is not altogether in point for the reason that the insane grantor did not come into court in the first instance seeking a cancellation of his void deed, but was brought in as one of the defendants to the bill to quiet title, and when brought in, sought cancellation by cross-bill.

The author of the text in 32 Corpus Juris § 540, p. 748, states the rule bearing on the question now before us as follows: "It is generally held that the conveyance may be set aside without requiring the consideration to be refunded where the grantee had knowledge of the grantor's insanity, or where the consideration paid is so inadequate as to evidence an intention of the grantee to take advantage of the grantor's infirmity to defraud him. *In such cases, at most, it is necessary to return only what is left."* (Italics supplied.)

The Supreme Court of Massachusetts, many years ago, had occasion to pass upon a case involving the exact question now before us. That court in the case of Gibson v. Soper, 6 Gray (Mass.) 279, 66 Am. Dec. 414, held that a conveyance by an insane person could be avoided by him without being required, as a condition precedent to relief, to make restitution to the grantee. That to hold that restitution must be made as a condition to relief would be to say, in effect, that, in a large majority of cases, his deed shall not be avoided at all. This Massachusetts case has been cited with approval by the highest courts in a number of the states of the Union, and, at the expense of brevity we will quote from it:

"Upon the first impression, it may seem equitable that such restoration should be made, before the insane or infant grantor should recover his estate; but it is an impression which a little reflection removes. The law makes this very incapacity of parties their shield. In their weakness they find protection. It will not suffer those of mature age and sound mind to profit by that weakness. It binds the strong, while it protects the weak. It holds the adult to the bargain which the infant may avoid; the *sane* to the obligation from which the *insane* may be loosed. It does not mean to put them on an equality. On the other hand, it intends that he who deals with infant or insane persons shall do it at his peril. Nor is there, practically, any hardship in this; for men of sound minds seldom unwittingly enter into contracts with infants or insane persons.

"If the law required restitution of the price, as a condition precedent to the recovery of the estate, that would be done indirectly which the law does not permit to be done directly; and the great purpose of the law, in avoiding such contracts, the protection of those who cannot protect themselves, defeated. The insane grantor could not avoid the deed of his estate, *because the same folly, which induced the sale, had wasted the proceeds; the result against which it is the policy of the law to guard."* (Italics supplied.)

The reason of the rule for declaring void conveyances by insane persons is not merely his incapacity to make the deed, but also his incapacity prudently to manage and dispose of the proceeds. Reaves v. Davidson, 129 Ark. 88, 195 S.W. 19.

The Supreme Court of Errors of the state of Connecticut, in the case of Beckwith v. Cowles, 85 Conn. 567, 83 A. 1113, held that it is a general rule that, where one seeks the advantage of a rescission of a contract, or reconveyance, he should not be permitted to retain the consideration received by him. In other words, he who seeks equity must first do equity. But this court expressly held in that case that this rule has no application, except in cases where the grantee acted in good faith and without knowledge of the grantor's incapacity.

In the case of Reaves v. Davidson, supra, the Supreme Court of Arkansas held that it was not necessary that the insane person should restore the consideration, where it appeared he had spent or wasted the same.

The Supreme Court of Illinois, in the case of Fecht v. Freeman, 251 Ill. 84, 95 N.E. 1043, held that one who trades property with an insane person in *good faith and without knowledge of the insanity* should be placed *in statu quo* by requiring the money paid by him to the insane person to be returned before the transaction is set aside; but if he does not deal in good faith, but with an intention to defraud, and knew, or should have known, of the insanity, the transaction may be set aside without requiring that he be reimbursed for the money paid on the purchase.

The Supreme Court of Indiana, in the case of Thrash et al. v. Starbuck et al., 145 Ind. 673, 44 N.E. 543, 546, in passing upon a similar question here presented, observed: "It has not, to our knowledge, been decided in this or any other state that, where the contract has been entered into with knowledge of the insanity, and an unconscionable advantage has been taken of the insane person, it is a necessary prerequisite to avoidance that a tender of that which has been received by such insane person shall be made. If the rule requiring the parties to be placed *in statu quo* includes,

as a necessary element, the requirement that the party dealing with the *non compos* shall be ignorant of the incapacity, and shall not deal unfairly, it would seem to follow as an indispensable result that the presence of such knowledge and of an unfair advantage would discharge the rule; otherwise such elements of the rule are mere empty phrases."

The Supreme Court of Nebraska, in the case of Dewey v. Allgire, 37 Neb. 6, 55 N. W. 276, 40 Am.St.Rep. 468, gave its unqualified approval to the proposition that it would be absurd to annul the bargain for mental incapacity of a party, and yet to require of him to retain and manage the proceeds of· his sale so wisely and discreetly that they shall be forthcoming when with restored intellect he shall seek its annulment. This court unqualifiedly commits itself to the doctrine that it is not necessary to restore the consideration paid.

The Supreme Court of Maine, in the case of Hovey v. Hobson, 53 Me. 451, 457, 89 Am.Dec. 705, gave its approval to the same doctrine announced in Gibson v. Soper, supra.

The Supreme Court of Oregon, in the case of Schindler v. Parzoo, 52 Or. 452, 97 P. 755, held ·that where the grantee in a deed of a non compos knew of the grantor's insanity, and, in addition, was guilty of a fraud in the procurement of the conveyance, that such grantee was not entitled to restitution.

The Supreme Court of New´ Jersey, in the case of Eaton v. Eaton, 37 N.J.Law 108, 18 Am.Rep. 716, gave its approval to the doctrine that where a fraud is practiced upon one who is known at the time to be insane, it is not required that restitution should be made to avoid the contract.

Our own court, in a number of cases, has held that where the conveyance is infected with actual fraud, as contradistinguished from constructive ´fraud, it will not be allowed to stand for any purpose. Nelson v. Boe, 226 Ala. 582, 148 So. 311; Virginia Carolina Chemical Corporation et al. v. Satsuma Orange & Pecan Groves Co., 227 Ala. 55, 148 So. 853; Campbell v. Davis, 85 Ala. 56, 4 So. 140; Pritchett v. Jones, 87 Ala. 317, 6 So. 75; Ruse v. Bromberg, 88 Ala. 619, 7 So. 384; Gordon, Rankin & Co. v. Tweedy, 71 Ala. 202, 213.

Other cases, in line with the above holdings, could be cited, but we deem the foregoing sufficient to demonstrate the bent of the judicial mind against permitting the avaricious, shrewd, and designing man of affairs to deal with one whom he knows to be incapable of dealing with judgment and discretion, and, after taking an unfair and unconscionable advantage of the opportunity, incur no hazard whatever. .If the courts would permit him to so deal, and thereby run no risk of losing that with which he parted, then he is not restrained in attempting the advantage as time and occasion present themselves. We know of no principles of law, or of morality, which require courts of equity to be swift, in extricating one who has laid meshes for another, and has been caught himself.

It only· remains to be said that we are in full accord with the conclusions reached in the above-cited cases, that a man who deals with one of unsound mind, and having notice or knowledge of such insanity at the time, does so at his peril. That such an one cannot be accorded the rights of a bona fide purchaser, nor is he, *ordinarily,* entitled to restitution, as a condition precedent to the cancellation· of the contract. And when, in addition to dealing with a man of known unsound mind, he practices a positive fraud upon him, a court of equity will not exert itself in behalf of such a defrauding party.

If the consideration paid has been wasted or dissipated by the non compos, equity will not refuse to cancel the contract because of the inability of the defrauded party to return the consideration paid. For to do so would often result in allowing the shrewd, avaricious, and designing man to hold to his ill-gotten goods.

However, in the case at bar, the complainant has offered to "do equity," that is, and must be construed to mean, an offer to do what a court of equity deems proper and equitable under the *circumstances of the case.*

The utmost consideration due appellee Marinous in this case is that the 6 and 495/1250 shares of stock in the reorganized Baldwin County Bank, and the certificate of deposit of $239.86, issued by said bank to complainant Ivey be delivered to the said Marinous, in lieu of the consideration paid by him, and that the note of $500 be returned to appellee Frankos.

In decreeing that complainant should, as a condition precedent to the cancellation of the conveyances, return to´ appellee Marinous the $500 paid by him, with 8 per centum interest thereon from November 23,

1931, the court below committed errcr. The court should have limited restitution to requiring the delivery to Marinous of the said bank stock and the said certificate of deposit, and the return of the Frankos note. This was the full extent of restitution to which the parties were entitled..

The decree of the circuit court will be here affirmed in so far as it decreed that the conveyances were null and void, but will be here corrected to conform to this opinion. A decree will be here entered accordingly.

Appellant will be allowed ninety days from this date within which to deliver to the register of the circuit court of Baldwin county, for Marinous, the said bank stock, and a similar period of time within which to deliver to the register the said note for Frankos; with power in the circuit court to extend the time, upon sufficient excuse therefor shown to the court.

As corrected, the decree appealed from will be, and is here, affirmed.

Appellees are taxed with all the costs accruing in this cause in the court below and with all the costs accruing on this appeal.

Corrected and affirmed.

THOMAS, BOULDIN, and BROWN, JJ., concur.