## AMERICAN TRUST & BANKING COMPANY *v.* BOONE, administrator.

1. As a general rule a bank may assume that a trustee will apply money deposited by him to its proper purposes under the trust, and is not accountable for any misappropriation of trust funds in which it does not participate; but a bank can not, without incurring liability to the true owner, knowingly appropriate to the satisfaction of a debt due to it by another trust funds deposited with it by him after the creation of such debt.

2. Where in this manner a bank improperly appropriates a portion of a trust fund to its own use, it is liable for interest thereon from the time of demand by the true owner and its refusal to pay, and is also liable for interest computed from the same time upon a balance of the identical fund not so appropriated but payment of which was then demanded and refused.

3. A bank in this State will not be protected in paying a check of a person who had been lawfully adjudged to be insane and who was in fact insane when the check was drawn. This is true though the fact of insanity was unknown to the bank at the time of payment and though the adjudication of insanity was made in another State.

4. The grounds of the motion for a new trial based on alleged error in admitting evidence did not disclose what, if any, objections to the same were made at the trial; there was no error in the charges complained of; the charge as a whole fairly submitted to the jury the issues involved; the evidence warranted the verdict, and there was no error in denying a new trial.

Argued June 4, — Decided August 7, 1897.

Equitable petition. Before Judge Lumpkin. Fulton superior court. March term, 1896.

*Ellis & Gray,* for plaintiff in error.

*Clay & Blair, Arnold & Arnold, W. R. Power* and *King & Anderson,* contra.

COBB, J. Boone as administrator of B. F. Cooper brought suit against the American Trust & Banking Company. The case made by the evidence was as follows: B. F. Cooper died

on November 2, 1893, and J. H. Cooper, a resident of Atlanta, Georgia, was appointed administrator of his estate by the county court of Orange county, Florida. Among the assets of the estate was a policy of life-insurance for the sum of $5,000. A check for this amount payable to J. H. Cooper as administrator of B. F. Cooper was received by such administrator on December 21, 1893. It was indorsed by him as administrator, and deposited to his individual credit in the defendant bank. He stated to the bank's officer that he was the sole heir of the estate. Having been in business, and having an account with the bank, he had become indebted to it in the sum of $1,910.74, evidenced by promissory notes. The bank, claiming to act under instructions from him, charged against his account the amount of these notes. After the payment of sundry checks drawn by him, there remained to his credit the sum of $1,810.53. About December 26, 1893, he became insane, and on the 30th day of December, 1893, he was adjudged a lunatic by the circuit court of Orange county, Florida. The fact that he was insane and had been so adjudged was unknown to the bank when it paid a check drawn subsequently to the judgment. He died shortly afterwards. The plaintiff was appointed administrator de bonis non of B. F. Cooper on April 19, 1894. B. F. Cooper left a number of heirs, and no settlement of the estate was ever made by J. H. Cooper as administrator. The plaintiff contended that the bank received the check for $5,000, knowing that it was an asset of the estate of B. F. Cooper, and that the crediting of the amount to the individual account of J. H. Cooper and the application of the same to his individual indebtedness to the bank was such a misappropriation of the fund as to render it liable to the legal representatives of B. F. Cooper. The bank denied any notice or knowledge that J. H. Cooper contemplated misappropriating the money, or that the money did not in fact belong to him; and claimed to have received the deposit in the regular course of business, and to have paid upon his checks all of the sum so deposited, except $1,810.53, which amount it has always been ready and willing to pay to the person entitled thereto. It further claimed that, the deposit being general, without agreement to pay interest, it was

not liable to pay interest thereon.   The jury returned a verdict for the plaintiff for $3,860.27 principal, besides interest.   This amount was made up of the following items: Balance admitted as standing to the credit of the estate, $1,810.53; amount of notes due the bank, charged to the account of J. H. Cooper, $1,910.74; check paid on January 2, 1894, drawn by J. H. Cooper after he had been adjudged insane by the courts of Florida, $139.   The defendant made a motion for a new trial, which the court overruled, and it excepted.

1. Every person is presumed to have the intention of discharging whatever duty the law may cast upon him; it is therefore presumed that a trustee will faithfully administer the trust and will not misappropriate the funds of the estate which are committed to his care.   When a trustee deposits money in a bank, the bank has a right to assume that the money so deposited will be applied by the trustee to the proper purposes under the trust, and acting under this assumption it may lawfully pay the checks drawn by the person depositing the money, whether signed in his representative capacity or not. But while this is true, if it actively aid the trustee in misappropriating the fund, and especially if it participate in the misappropriation, and receive the fruits of such misappropriation by obtaining payment of a debt due it by the trustee in his individual capacity, the bank would be liable to the true owners of the fund for the amount thus wrongfully appropriated by it to its own uses.   *Munnerlyn* v. *Augusta Savings Bank*, 88 *Ga.* 333; Morse on Banks and Banking (3d ed.), § 317.   Where the debt thus paid was created before the trust funds were deposited, and the fact that such funds were impressed with the trust was known to the bank by entries upon the check which was delivered to it, the fact that the depositor made statements to the bank that he was the real owner of the fund, and the bank acted upon such statements, would not relieve the bank from its liability to the true owner of the fund when it appeared that such statement was not true.

2. When it appeared in such a case that a demand was made upon the bank by the true owner for the amount which had been misappropriated, as well as for the amount which

was admitted to be due, and the bank refused payment under such demand, it became liable for interest upon the whole amount from the date of such refusal.

3. On January 2, 1894, when the bank paid the check for $139 drawn by J. H. Cooper, he had been adjudged to be insane by a court in Florida having jurisdiction of such matters; and there was also other evidence that he was at that time and subsequent thereto in fact insane. This being true, was the bank, which had no notice of the fact of insanity, or that J. H. Cooper by a judgment of a court had been adjudged to be insane, protected on account of such ignorance in the payment of the check? The law of this State upon such question is to be found embraced in section 3652 of the Civil Code. It is there provided, that an insane person can not contract prior to commission sued out and guardianship appointed; that a lunatic may contract during lucid intervals; after guardianship he can not. By the terms of this section it is declared that an insane person, using this expression in the sense of a person non compos mentis, whether idiot, lunatic, or imbecile, has no power to enter into a contract after such insanity takes place. While there is a conflict in the authorities as to the effect to be given to a contract made by insane persons, "it may now be regarded as a general rule of universal law, that the contracts of a lunatic, idiot, or other person non compos mentis, from age or other infirmity, are utterly void." 1 Daniel on Negotiable Instruments (4th ed.), § 209; Rogers v. Blackwell, 49 Mich. 192; Dexter v. Hall, 15 Wall. 9; Seaver v. Phelps, 11 Pick. 304; Anglo-Californian Bank v. Ames, 27 Fed. Rep. 727. Judge Story in his treatise on Bills of Exchange, discussing the question of the disability of insane persons to bind themselves as drawers, indorsers or acceptors of such papers, says: "This disability flows from the most obvious principles of natural justice. Every contract presupposes that it is founded in the free and voluntary consent of each of the parties, upon a valuable consideration, and after a deliberate knowledge of its character and obligation. Neither of these predicaments can properly belong to a lunatic, an idiot, or other person non compos mentis from age, or imbecility, or

personal infirmity. Hence, it is a rule, not merely of municipal law, but of universal law, that the contracts of all such persons are utterly void. The Roman law in expressive terms adopted this doctrine, *Furiosus nullum negotium gerere potest, quia non intelligit, quod agit.*" Story on Bills of Exchange, § 106. The authorities above cited establish the doctrine, that a contract by an insane person, whether executory or executed, is utterly void; and this too when there has been no judicial determination of the fact of insanity except in the trial of the issue where the question is raised to defeat the contract which is sought to be enforced or set aside. Where there has been a judicial determination of the fact of insanity by a court having jurisdiction to enquire into and determine the mental condition of the individual concerned, it would seem that this would be simply evidence admissible for the purpose of proving the fact of insanity, and evidence of a high character, but only cumulative of other competent evidence on the subject. That an adjudication by a court having jurisdiction to determine the question is prima facie evidence everywhere of the fact of insanity is well established by authority. 2 Black on Judg. § 802; Buswell on Insanity, §§ 197–9; Woerner on the American Law of Guardianship, § 128.

Under the law of this State, above quoted, after the fact of insanity has been established by a court of competent jurisdiction in this State and the affairs of such person vested in a guardian, the power of such person to contract is entirely gone, and such contracts are absolutely void. This part of the section is consonant with the adjudications on the same subject in other States. In the case of Pearl *v.* M'Dowell, 3 J. J. Mar. (Ky.) 659, it was held that after office found the contracts of idiots or lunatics were void. Judge Buckner quotes in his opinion to sustain this decision the following extract from Bacon's Abridgment: "Yet it seems that even at law the contracts of idiots and lunatics, after office found, and then party legally committed, are void, and it must be at the peril of him who deals with such a one." The same principle is recognized in the case of Wait *v.* Maxwell, 5 Pick. 217. It is true that in

the cases cited the adjudication of lunacy was had in the same jurisdiction in which it was pleaded; but this would not alter the application of the doctrine so far as the adjudication of lunacy is to be used as evidence of the fact. While it may be that in the jurisdiction in which the person is declared to be insane the judgment would be conclusive, still the judgment on this subject lawfully rendered in any other jurisdiction would be at least prima facie evidence of the fact of lunacy; and in any case where it is shown, either by a judgment of a court or other competent evidence, that the person making the contract was at the time of its execution non compos mentis, such contract is void, and "the mere circumstance that, for the time being, he so deported himself as to conceal his lunacy or imbecility, can not alter his right to be protected against his own misfortune. And though honest persons may be ignorant of his condition, that is their misfortune, and they should not be allowed to throw it upon one already helpless." 1 Daniel on Negotiable Instruments, § 210. "The right of avoiding a contract exists, notwithstanding the person with whom the insane man contracted was not apprized of and had no reason to suspect the existence of such insanity, and did not overreach him by any fraud or deception." Hovey v. Hobson, 53 Me. 451–453.

There being evidence that at the time the check in question was drawn by Cooper, and at the time it was paid by the bank, Cooper had not only been adjudged insane by a court in another State, but was in fact insane, shown by other evidence than the judgment, the check was absolutely void, and the bank paid it at its peril and must bear the loss. The judgment of the court in Florida adjudicating the question of J. H. Cooper's insanity, if not absolutely binding and conclusive upon the question of his mental condition, on account of his not having been domiciled in the State of Florida at the time the court passed upon the question, would still be admissible in evidence and would be prima facie proof of the fact that the judgment sets up. Cooper, though a citizen of Georgia, having submitted himself to the jurisdiction of the courts in Florida by accepting an appointment as administrator on B. F.

Cooper's estate, gave to the courts of that State the right to inquire into his mental condition in order to determine whether he was still able to discharge the duties he had assumed under the Florida law; and having jurisdiction for this purpose, the judgment of the courts of that State would be prima facie evidence in the courts of this State.

4. The record discloses no error which would require the granting of a new trial, and the motion was properly overruled.          *Judgment affirmed.     All the Justices concurring.*