## BEAVER BOARDS COS. v. IMBRIE & CO.  J. H. HILLSMAN & CO. et al. v. SAME.  Intervention of HOSIER.

(District Court, N. D. Georgia.  March 13, 1923.)

No. 158.

1. **Courts** ⬲522—**Court of ancillary receivership held to have jurisdiction of intervention by creditor.**

Where creditors' bill was filed in New York federal court against brokers having their principal place of business there, and receivers were appointed, and ancillary receivership in the federal court in Georgia was asked and granted, and a receivership proceeding against the brokers in the Georgia state court was removed to the federal court and consolidated, *held*, that the Georgia federal court had jurisdiction of an intervention by a creditor of the brokers, who claimed that he had given them a check to use in buying stocks, which was deposited to the brokers' credit in a national bank in Georgia, and that the brokers failed without buying the stock, ⸢whereupon the bank offset certain notes it held against the brokers against the deposit, absorbing it, and who asked that the bank be made a party and be required to pay the amount of his check to the receivers or to such creditor; such dependent controversies being entertained in the federal court, though, standing alone, jurisdiction would not have been exercised over them, only from the necessity for entertaining them in order to execute fully and correctly the original jurisdiction.

2. **Courts** ⬲522—**Intervention would be decided by court of ancillary receivership.**

Where New York brokers failed, and main receivership was in New York federal court, and an intervention was filed in ancillary receivership proceedings in the federal court in Georgia by a creditor of the brokers, who claimed that he had given them a check to use in buying stocks, which was deposited to the brokers' credit in a national bank in Georgia, and that the brokers failed without buying the stock, whereupon the bank offset certain notes it held against the brokers against the deposit, absorbing it, and who asked that the bank be made a party, and be required to pay the amount of his check to the receivers or to such creditor, *held*, that the federal court in Georgia would pass on the controversy, and not remand the parties to the primary jurisdiction in New York, as the right sought to be asserted by intervener was a special equity attaching, not to the general estate, but to a particular asset, that is, the deposit in the Georgia national bank, but that the Georgia federal court would not undertake to decree a general lien on the estate of the insolvents, or fix any priority therein.

3. **Banks and banking** ⬲134(6)—**Bank may not set off notes against account of insolvent broker, where no new credit given, and account is trust money.**

Where check of customer of brokers was given to them to buy stock for the customer, and was deposited by them in their bank, and they failed before buying the stock, *held*, that the bank could not, by virtue of its contract or ⸢otherwise, set off, against the portion of the deposit which represented the check, notes held by it against the brokers, where, although it had no notice of the customer's equity in the deposit, no extension of credit to the brokers or other change of position by the bank occurred by reason of such deposit of the customer's check to give the bank any equity in respect thereto, and that therefore the bank should surrender the amount of the check to the brokers' receiver, and they in turn should surrender it to the customer.

⬲For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

.In Equity. Suit by the Beaver Boards Companies against Imbrie & Co., in which ancillary receivership was granted, consolidated with a suit by J. H. Hillsman & Co. and others against Imbrie & Co., removed to the federal court. On intervention of J. S. Hosier. Decree for intervener.

Dorsey, Brewster, Howell & Heyman, of Atlanta, Ga., for intervener.

Little, Powell, Smith & Goldstein, of Atlanta, Ga., for receiver.

Little, Powell, Smith & Goldstein and Ronald Ransom, all of Atlanta, Ga., for Fulton Nat. Bank.

SIBLEY, District Judge. On March 3, 1921, in the District Court of the United States for the Southern District of New York, was filed a creditors' bill against Imbrie & Co., stock and bond dealers and brokers, citizens of New York, New Jersey, and Massachusetts, whose principal place of business was New York. Receivers were appointed. On the same day, in the superior court of Fulton county, Ga., other creditors, citizens of Georgia, sought and obtained a receiver for assets of Imbrie & Co. in Georgia, connected with a branch office operated in Atlanta. On March 7, 1921, the New York receivers, by direction of the New York court, applied for ancillary receivership in this court and were, with the state court receiver, made such ancillary receivers. On March 8th Imbrie & Co., removed to this court the case in the Fulton superior court. The two proceedings were then consolidated by consent, and numerous interventions have been allowed in this court, among them that of I. S. Hosier. His claim, in brief, is that he gave Imbrie & Co., in Atlanta, on February 21, 1921, a check for $2,656.13, to be used as his brokers in buying certain stocks; that Imbrie & Co. deposited it to their credit in Fulton National Bank on February 23d; that the proceeds of its collection were still to the credit of Imbrie & Co. 'at said bank, though in equity belonging to Hosier, when the firm failed without having bought the stock, whereupon Fulton National Bank, on March 3d, offset certain notes it held against Imbrie & Co. against the deposit, absorbing it. Hosier prays that the bank be made a party and be required to pay the $2,656.13 to the receivers or to him. By an amendment he asks also a judgment against the estate in the receivers' hands, with a first lien or otherwise, if the bank could not be required to repay the money to them for him. This intervention was allowed, the bank was made a party, and the issues made by answers to the intervention referred to a master. Exceptions to his report raise three principal questions: First, has this court, as a federal court, jurisdiction of this controversy; second, should it pass upon it or remand the parties to the primary jurisdiction in New York; third, on the merits has the bank the right to make the set-off as against Hosier.

[1] 1. Such discretion·as the court has in allowing interventions has been exercised in the allowance of this one. In testing the federal jurisdiction to entertain it, the case may be considered as a primary creditors' bill. Such the proceeding removed from the state court is.

As to ancillary proceedings, the federal jurisdiction, as distinguished from territorial jurisdiction, would be the same as in the primary court. The purpose of the ancillary receivership is to extend the power of the primary court over a territory which it itself could not otherwise reach. The basis of federal jurisdiction in all the suits is diversity of citizenship. Creditors of Imbrie & Co. having the requisite diversity of citizenship have invoked federal authority, and in the exercise of it the federal court must exercise an equitable jurisdiction in the collection and administration of assets, which may result in following complicated threads of right through all their ramifications in the affairs of Imbrie & Co.

Dependent controversies thus arising are entertained in the federal court, although, standing alone, jurisdiction would not have been exercised over them, only from the necessity for entertaining them in order to execute fully and correctly the original jurisdiction. Let us follow this idea through familiar instances. Receivers having been appointed to collect all assets within the territorial jurisdiction of the court for the purpose of applying them to the claims of the creditors who filed the proceeding, in order to avoid depriving other creditors having equal rights of their share in the assets so collected, the federal court must permit them to intervene and assert their rights, regardless of their citizenship or amount involved. So again the court, having seized control of the assets, must be open to entertain complaints of others seeking to assert title to, a lien upon, or an equity in any of the property so taken by the court to avoid doing wrong to them by the taking. These may intervene or proceed by dependent bill, regardless of citizenship, as was allowed in a branch of this same litigation in Equitable Trust Co. v. Port Wentworth Terminal Corp. et al. (D. C.) 281 Fed. 883. So the federal court's receiver may be authorized, if assets are withheld, to proceed against persons having them without regard to the citizenship of the parties to that particular controversy or the amount involved. The right thus to control assets is not confined to such as are physical, and of which physical possession may be taken. It applies to collecting choses in action, the control over which may be asserted by actual collection or by the institution of a suit therefor or having an accounting in cases of complication. White v. Ewing, 159 U. S. 36, 15 Sup. Ct. 1018, 40 L. Ed. 67.

Upon the filing of an application for receivership, the power of the court to control all the assets attaches, though actual possession has not been taken, and it will not be interfered with by any other court under proceedings subsequently filed. Palmer v. Texas, 212 U. S. 118, 129, 29 Sup. Ct. 230, 53 L. Ed. 435. This potential control continues until the asset is brought within the receivership or until the court definitely abandons it. Porter v. Sabin, 149 U. S. 473, 13 Sup. Ct. 1008, 37 L. Ed. 815. The deposit account of Imbrie & Co. with Fulton National Bank was an asset within the territorial jurisdiction of the court, when on March 3d application was made for receiver and a receiver appointed in Georgia. The right of this court to direct its receiver to collect it must be considered undoubted. The fact that Fulton National Bank, since the failure and on the same day that

the receiver was appointed, undertook to destroy the asset by off-setting it against its debt, would not hinder this court from investigating such disposition and bringing to an accounting the Fulton National Bank. In such accounting Hosier might well have been made a party for the purpose of asserting his right to the asset in question. The disposition sought to be made by Fulton National Bank could not be treated as final, or cutting off this right of inquiry and administration by the court through the receivership.

The question of an independent remedy elsewhere being afforded to Hosier is beside the mark. It may be true that he would have the right to sue Fulton National Bank in equity in a state court under the decision of Union Stockyards Bank v. Gillespie, 137 U. S. 411, 11 Sup. Ct. 118, 34 L. Ed. 724; but in such a suit, claiming the deposit in equity to be his, he could not ask a judgment to that effect against Fulton National Bank, without joining, necessarily, as parties in the suit, Imbrie & Co. and the receivers now in charge of their assets, because otherwise the judgment of the court would not do complete justice, but would leave Fulton National Bank exposed to a suit by Imbrie & Co. or the receivers upon the legal liability to them. Shields v. Barrow, 17 How. 130, 15 L. Ed. 158; Porter v. Sabin, 149 U. S. 473, 13 Sup. Ct. 1008, 37 L. Ed. 815. Had Hosier attempted such a remedy, the consent of this court to join its receivers would have been necessary; Judicial Code, § 66 (Comp. St. § 1048), not applying. It could have accorded such consent, thereby relinquishing control of this asset to the state court, or it could have declined it, in which event it would be in duty bound to administer the asset and try the controversy itself. Instead of so doing, Hosier has applied directly to this court in substance for the same action by it. It does not seem that the authority of the court to deal with the controversy is any less, because Hosier asks it to do so, than it would be if it had of its own motion directed the receivers to proceed. Indeed, this court could not rightly allow matters to remain as they are. It appears that Fulton National Bank, after crediting the deposit account in controversy and realizing on other collateral, has due it a balance of about $700, and still holds as collateral security $20,000 of Port Wentworth Terminal bonds and 200 shares of sugar stock described as of doubtful value. By nonaction the receivers of this court would thus permit the use of Hosier's money, wrongfully as between Hosier and Imbrie & Co., to relieve collateral which seems likely to come finally into the estate handled by the receivers, and certainly to diminish the general claim of the bank against the general assets of Imbrie & Co.

To permit this consequence to ensue would be for this court and its receivers to take a wrongful advantage of Hosier's money. There would appear to be not only a convenience, but a necessity, for it to entertain an accounting between the bank, Hosier, and the receivers for the purpose of adjusting and settling their respective rights. Any other rule would have required in this litigation numerous trials in state courts, about nearly every asset in the hands of the receivers, with an embarrassment and a delay to the federal court in the execution of its functions that would have been intolerable. The intervention of Ho-

sier is, in substance, but a seizure on the part of this court of the asset of Imbrie & Co. represented by this deposit account with Fulton National Bank, by requiring an accounting with said bank of the deposit for the benefit of all who may be concerned, giving effect, of course, to all the just rights at law or in equity of the bank in making the accounting. The right and duty of examining into the disposition alleged to have been made of this asset since the failure of Imbrie & Co. seems undoubtedly to vest in the court of the receivership.

[2] 2. It is doubtful whether this consolidated case be really an ancillary one. A receiver in Georgia was appointed in the state court before the ancillary receivers were appointed in the federal court, and the two proceedings have since been consolidated. The Atlanta office, however, was only a branch office, and the assets here are relatively small, and the major administration must necessarily, in fact, be in the New York court. The case here has heretofore been treated as ancillary to that there. So viewing it, this court has announced that it would collect the assets here, entertain such litigation as was involved in such collection, would adjudicate all claims of title to, special liens on, or equities in the assets here, and would then remit any funds to the main jurisdiction, and require all claims against the general assets to be asserted there. But the right sought to be asserted here is a special equity, attaching not to the general estate, but to a particular asset, to wit, the deposit account with Fulton National Bank. It is no violation of comity between courts of primary and ancillary jurisdiction to examine and adjudicate this equity here. This court will not undertake to decree a general lien on the estate of Imbrie & Co. or to fix any priority therein.

[3] 3. The exceptions made to the master's findings of fact do not appear to be well taken and are each overruled. Under the facts found by him, the check of $2,656.13 was not delivered as an advance payment for stock purchased of Imbrie & Co., but to be used by them as Hosier's agent in paying for stock to be purchased for him from others. Imbrie & Co. had no right to use it for their own purposes. When they deposited it in their own name in the bank, since it was a negotiable paper, a good title to the check passed to the bank; it having no notice of the facts. Knowledge that Imbrie & Co. sometimes acted as brokers was not notice that a particular check, apparently belonging to them, really belonged to the drawer, nor did it require inquiry as to the real ownership of each check deposited. But the case here does not concern title to the check, but title to what the bank gave in exchange for the check. Had it given money, that money, as between Hosier and Imbrie & Co., would have still been Hosier's, to be used to buy the stock. The deposit, though a chose in action, stood exactly the same; while the legal title to it was in Imbrie & Co., the beneficial ownership was in Hosier, and Imbrie & Co. could rightfully use it only to pay for the stock which they were to buy for Hosier. That such equitable rights as between the parties attach to bank deposits is settled by Union Stockyards Bank v. Gillespie, 137 U. S. 411, 11 Sup. Ct. 118, 34 L. Ed. 724, and Central National Bank v. Conn. Mutual Insurance Co., 104 U. S. 54, 26 L. Ed. 693.

Nothing happened to the deposit account between the date of this deposit and the failure by which it could be said to have been withdrawn or dissipated. The master in his seventh finding of fact establishes this. Any withdrawals that may have occurred, not reducing the balance below the deposit in controversy, would be presumed to have been of money belonging to Imbrie & Co. Lowell v. Brown (C. C. A.) 284 Fed. 936; cases cited in Central National Bank v. Conn. Mut. Insurance Co., supra. Had the matter not been complicated by the bank's effort to set off, it is clear that the receivers would have come into possession of this deposit, and would have been bound to surrender it to Hosier. What, then, were the bank's rights? Their contract rights are not important. The agreement of Imbrie & Co. to maintain a balance liable to set-off equal to one-fifth of their indebtedness to the bank was kept; such balance being always maintained over and beyond the fund here in dispute. The agreement contained in one of the notes that the bank might set off the deposit balance adds nothing to the legal right so to do. This particular deposit did not exist when the agreement was made, and nothing was done or refrained from on the strength of it. The right to make the set-off is, however, a legal right. It exists in others than bankers, and is confirmed by statute in Georgia, Code, §§ 4340, 4341, 4349. Perhaps custom plays a part in its application to bankers. It is not in strictness a lien, as is the banker's right to realize on physical property and papers of his debtor in his possession, though it is sometimes called such. The banker may set off what he owes to his debtor, but not what he owes to some other.

The first test of whom it is that he owes is the legal liability. But this may be affected by the equities of others in the debt. If he knows of these equities, his legal right to set-off like other legal rights, becomes subject to known equities. Union Stock Yards Bank v. Gillespie, 137 U. S. 411, 11 Sup. Ct. 118, 34 L. Ed. 724; American Trust & Banking Co. v. Boone, 102 Ga. 202, 29 S. E. 182, 40 L. R. A. 250, 66 Am. St. Rep. 167. If the equity is unknown, it may still prevail, if asserted before the banker has acted or refrained from acting on the faith of the appearances of the matter. If he has given credit to the deposit, he is protected as a sort of bona fide purchaser, or perhaps more correctly it becomes a case in which one of two innocent parties must suffer from the wrongful act of a third, in which case the loss is visited upon him who put it in the power of the wrongdoer to inflict the loss. If he has given no credit to the deposit, he is then in the situation of a mere volunteer, against whom equities may be freely asserted. Such is the reasonable law laid down as to bankers in Bank of Metropolis v. New England Bank, 1 How. 234, 11 L. Ed. 15, and 6 How. 212, 12 L. Ed. 409, and as to others in Wilson v. Smith, 3 How. 763, 11 L. Ed. 820. The cases of American Trust & Banking Co. v. Boone, Central National Bank v. Conn. Mut. Insurance Co., and Union Stockyards Bank v. Gillespie, cited above, are not in conflict with this doctrine. In the latter cases notice to the banker in fact existed, and his right of set-off was defeated for that reason. No question arose as to what the applicable law would have been in

the absence of notice. In the present case the bank, by contract, stipulated for the maintenance, subject to set-off, of a deposit balance of a certain amount. This balance was maintained outside of the fund in controversy, and it alone seems reasonably to have been credited by the bank. No new loan, nor any renewal of an old one, occurred between the deposit of the sum in controversy and the failure; no checks were honored which would not have been honored had this deposit not been made. The bank shows nothing to rebut or hinder the equity of Hosier, notwithstanding it had no notice of his equity. The bank should therefore be decreed to surrender to the receivers the sum in controversy, and they in turn should surrender it to Hosier.

A decree may be presented accordingly.