### 14015. BANK OF SHARON *v.* POWELL.

In an action against a bank by members of a religious association suing as copartners for the amount of a general deposit made in its name with the bank, where the defendant pleaded payment and the evidence showed, without contradiction, that the amount of the deposit was paid out by the bank on checks signed by the pastor of the association, and that the deposit had been made by a committee of members authorized to do so and to deal with the bank in behalf of the association, and who gave direction to the bank as to paying out the money on checks, but there was conflict in the evidence as to who was to sign the checks, it being testified on the part of the plaintiffs that the committee directed the bank to pay only on checks signed by both the pastor and another person named, and there being testimony on the part of the bank that the committee directed it to pay on checks signed by either the pastor or the other person named, it was error for the court to direct a verdict for the plaintiffs.

DECIDED APRIL 18, 1923.

Action for money had and received; from Taliaferro superior court — Judge Shurley. October 14, 1922.

Application for certiorari was denied by the Supreme Court.

*A. G. Golucke,* for plaintiff in error. *L. D. McGregor,* contra.

JENKINS, P. J. Powell with some 140 others as copartners in a colored religious association known as Mount Olive Baptist Church sued the defendant bank for certain monies which had been there deposited subject to check, and alleged that the bank had failed and refused to pay out such deposit upon a check properly drawn and presented by their duly authorized agent. The defendant in its answer set up that the funds, as partnership property of the plaintiffs, had been deposited with it as a general deposit by a banking committee of seven members of the church, with instructions that it be placed to the account of the church and subject to checks drawn thereon either by the named church pastor or a certain named member of the committee; and that the bank on checks duly signed and presented by said pastor had, in accordance with such authority, duly paid out all of said monies previous to the demand of the plaintiffs. In the trial the evidence sustained the pleadings of the defendant as above outlined, except that the plaintiffs' witnesses, including members of the banking committee, swore that when the committee made the deposit the bank was instructed to pay it out only on checks signed by both the pastor and the named member, while the defendant's

witnesses, including the bank cashier and two of the members of the committee, one of whom had been entrusted by the church with the physical possession of the money, swore that the instructions were to pay it out on the signature of either of the persons mentioned. The court directed a verdict for the plaintiffs. The contention of the plaintiffs is that they, as partners in an unincorporated religious association, are not amenable to the law applicable to commercial partnerships, but that the bank, being bound to know that the monies belonged to the church, was not authorized to pay them out without the authority or consent of a majority of the church members themselves; and that, since the checks upon which they had been paid were not so authorized, but had been signed only by the pastor, or, in addition to his signature, bore merely the forged signature of the other person thereon, the bank remained liable to the members of the church.

In the absence of notice or knowledge to the contrary, a bank can not question the right of a customer to withdraw funds deposited by him; and where the deposit is made by a trustee, the trustee has the same right to withdraw, since the bank has a right to presume that the trustee entrusted with the fund would appropriate the money, when drawn, to a proper use. *American Nat. Bank* v. *Fidelity Co.,* 129 *Ga.* 126, 129 (58 S. E. 267, 12 Ann. Cas. 666). In the case cited the bank was held liable only because the checks were not properly drawn and countersigned, as required by an order and decree of court of which the bank had knowledge; but it was in effect recognized that if the bank had not been so charged with knowledge of such requirement, it would not have been liable for the monies misappropriated. See also *City Bank of Macon* v. *Kent,* 57 *Ga.* 283; *American Trust Co.* v. *Boone,* 102 *Ga.* 202 (29 S. E. 182, 40 L. R. A. 250, 66 Am. St. Rep. 167); *Munnerlyn* v. *Augusta Savings Bank,* 88 *Ga.* 333 (14 S. E. 554); 7 Corpus Juris, 644, 645; 3 Ruling Case Law, 549, 550.

(*a*) Thus, whether or not such a partnership, composed of an unincorporated association of church members, is controlled by the general rules applicable to ordinary commercial partnerships (see Civil Code, §§ 2833, 3595, 3172, 3180; *Tucker* v. *Paulk,* 148 *Ga.* 228, 96 S. E. 339; *Montgomery* v. *Walton,* 111 *Ga.* 840, 36 S. E. 202; *Winkles* v. *Simpson Grocery Co.,* 138 *Ga.* 482, 484,

75 S. E. 640; *Turner* v. *Clarke*, 143 *Ga.* 44, 46, 84 S. E. 116; *Swygert* v. *Bank of Haralson*, 13 *Ga. App.* 640, 79 S. E. 759), it is nevertheless true that where it appears, from the undisputed evidence, that the church members or a majority of them entrusted their funds to a committee clothed with authority to deposit the same and to deal with a bank on behalf of their principals, the bank was authorized to accept and disburse the monies upon the terms and under the instructions given it by the committee.

(*b*) The ruling here made does not run counter to the provisions of section 2833 of the Civil Code (1910), providing that "the majority of those who adhere to its organization and doctrines represent the church," since the holding is based upon the theory that the duly authorized committee represented the majority who had constituted and empowered it. It does not contravene the rulings of the Supreme Court in *New Ebenezer Asso.* v. *Gress Lumber Co.*, 89 *Ga.* 125 (2), 4 (14 S. E. 892), since the contention of the defendant that the pastor was authorized to withdraw the funds is not predicated upon the fact that he was one of the members of the committee, but rests upon the contention that he was authorized by the entire committee so to do.

(*c*) The ruling here made is in harmony with the banking act (Ga. L. 1919, p. 209), section 42 of which provides as follows: "Whenever any agent, administrator, executor, guardian, trustee, either express or implied, or other fiduciary whether bona fide or mala fide, shall deposit any money in any bank to his credit as an individual, or as such agent, trustee, or other fiduciary, whether the name of the person or corporation for whom he is acting or purporting to act be given or not, such bank shall be authorized to pay the amount of such deposit or any part thereof, upon the check of such agent, administrator, executor, guardian, trustee, or other fiduciary, signed with the name in which such deposit was entered, without being accountable in any way to the principal, cestui que trust, or other person or corporation who may be entitled to or interested in the amounts so deposited."

(*d*) Since the evidence was in conflict with reference to the instructions given by the church committee as to the proper

method by which checks were to be signed, an issue was presented for determination by the jury, and it was error for the court to direct a verdict for the plaintiffs.

*Judgment reversed. Stephens and Bell, JJ., concur.*