## THE EMPORIUM v. BOYLE.

Third Division.   Valdez.   July 3, 1923.

No. 334–A.

**1. Sales ⬤⇒23(1)—Offer to Contract—Insane Persons.**

Frank M. Boyle gave the plaintiff, Emporium store, written orders on February 28 and March 28, 1922, to furnish merchandise to a woman named in the orders. Boyle was adjudicated to be an insane person on May 12, 1922. After the adjudication of insanity, the Emporium store delivered other goods to the woman, on these orders, and payment therefor was refused. Boyle died while thus insane, and suit was brought to recover for the goods delivered after the adjudication of insanity. *Held,* that the letters of credit given by Dr. Boyle did not constitute a contract, but only an offer to contract. He could have withdrawn the credit at any time, as no consideration had passed, except for goods already delivered.

**2. Insane persons ⬤⇒72—Contracts.**

An adjudication of insanity is notice to all the world of the fact that from that time on neither the lunatic nor his estate can be held upon any contract, except those completed before that time.

**3. Infants ⬤⇒46—Insane Persons ⬤⇒72—Contracts.**

An incompetent person cannot be bound by his contract, except for necessaries for his own use. This is true, whether the incompetence is that of infancy or mental infirmity.

**4. Principal and Agent ⬤⇒37, 42, 43(1)—Contracts—Revocation by Death or Insanity.**

A power or agency not coupled with an interest is revocable at will by the principal, and death or adjudication of insanity of the principal is a revocation by operation of law.

This case comes to the district court on appeal from the probate court, the issue being a demand against the defendant estate by the Emporium, of San Francisco, for merchandise furnished to Christine L. Taylor upon two written orders by the late Dr. Frank M. Boyle. These orders were dated February 28, and March 28, 1922. Dr. Boyle was adjudicated to be an insane person in King county, Washington, May 12, 1922. Under the written orders the Emporium furnished to Miss Taylor several bills of goods between February 27 and May 23, 1922, in the total sum of $357.70, upon which Dr. Boyle made a payment of $50, received by the claimant April 15, 1922.

⬤⇒See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

After the adjudication of insanity, goods to the, amount of $276.85 were furnished to Miss Taylor by the claimant. All the facts are stipulated, including the fact that the Emporium had no actual knowledge of the adjudication of Dr. Boyle's insanity when it furnished the goods to Miss Taylor after the adjudication.

J. L. Waller, of Anchorage, for plaintiff.
Edward F. Medley, of Cordova, for defendant.

RITCHIE, District Judge.  The sole issue is the question of liability for goods furnished Miss Taylor after the date of adjudication of insanity.  The possibility of Dr. Boyle's insanity before the adjudication is waived, and the administrator has offered to pay for goods furnished before that date.  Counsel for the administrator fairly says there are two questions of law before the court on this appeal: First.  Is an offer to contract revoked upon the offeror being judicially declared insane before acceptance by the offeree?  Second.  Does lack of actual notice of the adjudication of insanity on May 12, 1922, render the items furnished thereafter valid contracts against the insane person?

However, these two questions of law amount only to one issue, as already stated.  Authorities applicable to the question are very few since none of the cases brought to the attention of the court are precisely parallel on the facts to the one at bar, but several of them closely resemble it.  The authorities cited by counsel for the claimant, with one exception, do not appear to me to be in point.  They are all decisions holding that a completed contract made by a person who afterwards becomes insane must be carried out.  The authorities are in conflict as to the effect of insanity upon an executory contract, the decisions turning perhaps upon the approximate degree of completion of the contract.

In this case it appears to me that the contention of counsel for the administrator is correct—that the letters of credit given by Dr. Boyle did not constitute a contract, but only an offer to contract.  Dr. Boyle could have withdrawn the credit at any time, as no consideration had passed, except for goods already delivered.  The mere fact that he guaranteed an indefinite credit for an indefinite time does not alter the fact that there was no contract except when goods were delivered.  It was like

7 A.R.—6

an offer to buy or sell, which can be withdrawn at any time before acceptance. If Dr. Boyle had remained sane, and on May 12, 1922, had notified the Emporium that the credit was withdrawn, there could be no pretense that the Emporium could hold him any longer merely because he had for some time previous to that date bound himself to pay for goods delivered to Miss Taylor. All the authorities but one that appear to me to be worthy of consideration as precedents in stating the principle involved agree with the contention of counsel for the administrator—that an adjudication of insanity is notice to all the world of the fact that from that time on neither the lunatic nor his estate can be held upon any contract except those completed before that time. Cases which so hold upon facts somewhat similar are the following: Pritchett v. Thomas Plater & Co., 144 Tenn. 406, 232 S. W. 961, a case involving the sale of gas stock belonging to an insane man; Mitchell v. Stanton (Tex. Civ. App.) 139 S. W. 1033, a case of land title; and American Trust & Banking Co. v. Boone, 102 Ga. 202, 29 S. E. 182, 40 L. R. A. 250, 66 Am. St. Rep. 167, a case of payment of a check by the bank drawn by a man who had been adjudged insane. In all of these cases the court held that the adjudication of insanity was an absolute defense.

In the case of Orr v. Equitable Mortgage Co., 107 Ga. 499, 33 S. E. 708, a Georgia case, in which foreclosure was sought of a mortgage which was found to have been executed by the mortgagor when he was in fact insane, although it does not appear there had been any adjudication, the court held that the fact of insanity was a complete defense, regardless of whether or not the mortgagee had notice of the mortgagor's mental infirmity, or there was anything about his condition which would put a reasonably prudent man on notice of the insanity.

The only authority conflicting with these is an old Pennsylvania case decided in 1840, the opinion being by Chief Justice Gibson. The facts were somewhat similar to those in this case. That decision was rendered more than 80 years ago, and I do not think it is in harmony with the later decisions on the same question, and even the great authority of Chief Justice Gibson is insufficient to make it law at this late day.

The principle at stake is plain—that an incompetent person cannot be bound by his contract, except for necessaries for his own use, a question which is not involved in this case. This

is true, whether the incompetence is that of infancy or mental infirmity. It is designed for the protection of irresponsible persons, and the fact that it may and does sometimes work hardship upon persons who have dealt with incompetents in good faith, without knowledge of their lack of responsibility, does not impair the principle. Whenever one of two innocent persons must suffer, the burden is always placed upon the one whose negligence is responsible, or, if there is no negligence, on the one who is in fact responsible for the contract which cannot be carried out for the reasons stated. In a case like the one here, the responsible person is the one in full possession of his mental faculties, and able to take care of himself and his own interests. If he is misled, even though he exercises ordinary diligence, he is still the one who must bear the loss, because he is chargeable with notice of the other person's irresponsibility, whether he has any reasonable means of ascertaining that fact or not.

If this were not the rule, an illustration will show what injury might result to the estate of an insane person. Suppose that, after the adjudication of Dr. Boyle's insanity, Miss Taylor had seen fit to order goods to the value of thousands of dollars and the Emporium had delivered them to her. The same argument could be made for payment of those thousands of dollars as is now made on the demand for a few hundred dollars. The claimant could have stood upon the letter of the alleged contract, that Dr. Boyle had authorized the sale of goods to Miss Taylor without limit as to amount or time, and no revocation of that credit had ever been communicated to the other party. And suppose that the guardian of Dr. Boyle, after the adjudication of insanity, had found nothing in his papers to indicate that these letters of credit had ever been given. In that case the Emporium might have gone on for an indefinite period furnishing goods to Miss Taylor, and ultimately demanded payment for them.

At the bottom of one of the bills furnished by the Emporium is this statement: "Credit is contingent upon payment of account in full each month." There is nothing in the record to show that the claimant sent a bill to Dr. Boyle at the end of April, 1922. Had such a bill been mailed, it would have reached Anchorage about the date of the adjudication of insanity, and the persons looking after Dr. Boyle's business could have

promptly communicated to the Emporium the fact of the adjudication. I merely mention this to indicate the various possibilities of the case, because there is nothing in the record to show that anything like this was done on either side.

On the precise facts, this seems to be a case of first impression. Extensive search through the books has failed to reveal one corresponding to it in detail. The available cases seem to me to uphold in argument the view I have taken. This position is based upon a rule of law that requires no citation of authority. A power or agency not coupled with an interest is revocable at will by the principal, and death or adjudication of insanity of the principal is a revocation by operation of law. Miss Taylor had authority from Dr. Boyle to purchase goods at the Emporium on his credit, but the adjudication of his insanity canceled the agency. The letter of credit was revoked, because the world was charged with notice of the adjudication.

It follows that the claim for goods sold on or after May 12, 1922, must be disallowed.